The plaintiff sued the defendant for damages in the sum of $51,980, for personal injuries which he claims to have received on August 11, 1941, when he fell from the roof of a two-story brick building which he was helping demolish. He alleges in his petition that he and Patrick Windom entered into a contract with the defendant on August 9, 1941, to demolish a two-story brick building in the town of Covington, Louisiana, which building was owned by the defendant and had been condemned; that under the said contract he and Windom agreed to do the entire work of demolishing said building by themselves, employ no help without the consent of the defendant, and were to furnish their own tools and all necessary material for doing the work.
The contract annexed to the petition and made a part thereof contains the following provisions:
"The contractors state that they are fully experienced in their line of business and are qualified to complete the undertaking. In view of their experience and qualifications they hereby agree not to hold the owner liable for any accident or accidents while working on the building or any other part of the property nor in the demolishing of the building in question nor in any other work on any other part of the property. This agreement is made unconditional and shall remain in force until the completion of the present contract. It is expressly stipulated and understood that the building has been condemned and that the contractors are aware of this hazard."
The price fixed in the contract for the entire job was the sum of $450 to be paid as the work progressed.
Plaintiff concedes in his petition (as indeed he must from the nature of the contract which he annexes to his petition) that he and his partner were independent contractors in the undertaking, but he contends that at the time he was injured the contract had been modified by the conduct of the owner in meddling or interfering with the method and manner of doing the work, and the relationship was changed from that of owner and independent contractor to that of master and servant. In this connection, he alleges that after he and his partner had worked on the job for two days, on the morning of August 11, 1941, while he and his partner were engaged in the act of removing the accumulated material and debris from the ground in order to successfully carry on the work, the defendant appeared on the job and directed him and his partner to proceed to the roof of the building and commence to remove the slate therefrom; that he acceded to these instructions of the owner and abandoned the work he was doing and repaired to the roof as directed by the defendant, the petition making the following further allegations:
"That on reaching the roof petitioner found no difficulty in traversing the same, having frequently crossed and re-crossed the said structure on the day previous while in the act of removing the chimney tops of the building, much of the debris from which chimney constituted the material on the ground which petitioner was removing at the time he was interrupted by the said Gibert; that after taking the necessary precautions to preserve the slates from slipping to the ground petitioner began and continued for some time the orderly removal of the said slates until he had occasion to descend to the ground, and while approaching an improvised opening in the roof, and perceiving no defect of any nature whatever in the roof or that part thereof on which he was walking, a section of the *Page 614 
said slates on which he was standing suddenly loosened from their fastenings, causing him to fall, the momentum from said fall precipitating petitioner over the eaves, causing him to drop in a sitting posture from a height of approximately 25 feet, whence he landed in the accumulated debris or rubble above referred to; that in his act of falling petitioner seized the metal gutter from the eaves and this along with a large amount of debris followed petitioner to the ground and landed on various portions of his body."
The negligence charged to the defendant is that he interfered in the work so as to destroy the independent nature of the contract and thereby made plaintiff his servant and failed to furnish him a safe place in which to work.
An exception of no cause and no right of action was filed to the petition, and this exception was sustained by the court and the suit dismissed. Plaintiff has appealed.
We think the exception was properly sustained for at least two reasons; viz, the conduct of the defendant as set forth in the petition and as summarized above, did not have the effect of changing the relationship between the defendant and plaintiff from that of owner and independent contractor to that of master and servant, and in the second place, conceding that the relationship was so changed, the plaintiff assumed the risks incident to the work he was doing when injured.
The mere fact that the owner directed the contractors to go on top of the roof and begin removing the slate did not have the effect of changing the independent nature of the contract. All it amounted to was a change in the order in which the work was to be done. In other words, included in the contract was the removal of the roof which plaintiff and his partner were obligated to do before they could discharge their part of the contract. The mere fact that they were directed to remove the roof first (which ordinarily would be the first thing to do in demolishing a building) did not increase the hazards or the obligations of the contractors in carrying out their contract.
The direction which the defendant gave to the plaintiff did not change or alter the safety or hazard in the roof in any respect whatever, as the roof was in the same condition it was when plaintiff and his partner agreed to remove it as a part of their contract in demolishing the building on their own responsibility. To say that plaintiff might not have fallen, or the slate might not have slipped, had he gone on the roof in his own time and had done the work in his own way under his contract, is merely to enter the field of speculation and conjecture. It would be just as reasonable to speculate on whether or not the accident might have been more serious, or even fatal, had he fallen on the roof at a later date while carrying out his contract without any direction from the defendant whatever.
Learned counsel for plaintiff cite and largely rely on the case of Faren v. Sellers, 39 La.Ann. 1011, 3 So. 363, 4 Am.St.Rep. 256, but in that case the court grounded liability on the defendant for injury to a workman in demolishing a building because of the act of the defendant, not only in retaining and assuming direction and control over the means and methods of demolishing the building, but because of the fact that the defendant company had by its negligence caused the building to become weakened and dangerous by removing braces and supports after the company had entered into an agreement with a contractor to demolish part of the building. Its negligence was active and increased the hazard and was the proximate cause of the injury to an employee of the contractor. In the present case, as already stated, the defendant did nothing to loosen the slate on the roof, or make the work more hazardous after the contract was entered into.
In the second place, assuming that the relationship of plaintiff was changed from that of an independent contractor to that of a servant, he does not set up a set of facts that would show that the defendant was guilty of negligence in failing to furnish him a safe place in which to work. The plaintiff represented himself to be familiar with the work of demolishing an old building in the contract which he signed and which he annexed to his pleadings. He knew that in doing this work it would be necessary to remove the slate from the old roof, and that there was a likelihood that parts of this roof would be loose and more or less dangerous in walking or working on it. Whatever hazard there was in removing the roof was a part of the contract and was a risk assumed by the plaintiff whether he was working as an independent contractor or as an employee of the defendant, and he cannot now say that he did not assume the risks, hazards and dangers which ordinarily and incidentally flowed from the removal of *Page 615 
the roof from the old building, of which he had as much, if not a greater knowledge, than the defendant owner.
In the building or demolition of a structure there are hazards that arise constantly from the changing working conditions as the work progresses, and an employee in doing such work not only has a better opportunity of knowing the nature of these changing working conditions, but he has a part in making the changes in the conditions under which he works. On this point, the principle is concisely stated in the last paragraph of Section 187, p. 615, Volume 35, American Jurisprudence, as follows:
"It is obvious that the rule imposing liability on employers for not providing safe places to work can have only a modified application, if, indeed, any at all, where the employee who is injured is himself required to make the place safe or is engaged in putting it in proper repair or is the agent through whom the employer undertakes to see that the place is kept in good repair." See, also, Craig v. Craig et al., 192 Miss. 271,5 So.2d 673; City of Tupelo v. Payne, 176 Miss. 245, 168 So. 283.
Finding no error in the judgment appealed from the same is hereby affirmed.