YARRUT, Judge.
Plaintiff is a brother-in-law of Defendants, Mr. and Mrs. Ellis M. Bonstaff, and he sues them and their liability insurer to recover for personal injuries he suffered under the following circumstances:
On May 22, 1963 about twelve noon, Plaintiff was requested by Mrs. Mary Ann Juneau, wife of Ellis M. Bonstaff, to examine the roof of their home at 106 Alexander Place, Arabi, Louisiana; that, while examining the roof, he fell from the roof to the ground; that a subsequent investigation revealed the roof was covered with debris consisting of boards, tools and wire extensions, the by-products of work done by Mr. Bonstaff.
Plaintiff alleges that the sole and only cause of his injury was the negligence of Defendant (Ellis Bonstaff) due to the following :
1. Debris was permitted to remain on roof, which created a hazardous condition.
2. Not having premises in proper condition.
3. Failure to provide safe conditions on premises for investigation requested.
4. Failure to give proper warning of said unsafe conditions.
Defendants denied all allegations and, in the alternative, pled contributory negligence of Plaintiff in:
1. Failing to watch where he was walking.
2. Failing to be mindful of his surroundings.
3. Failing to take any precautions to avoid falling.
Judgment was rendered by the district court in favor of Plaintiff and against all Defendants in the sum of $7,000.00, in solido, with legal interest from date of judicial demand until paid, and for all costs.
The evidence establishes that the Bon-staff s are the owners of a frame dwelling, located at 106 Alexander Place, Arabi, St. Bernard Parish, Louisiana. Mr. Bonstaff had himself begun extending the roof on his home so it would overhang the exterior walls.
Plaintiff admitted he is a contractor and carpenter and has done considerable residential work. He had assisted Defendants in building an additional room on the rear of their home.. Defendants later requested that he assist and advise them in connection with their project of extending the roof on their home. Defendants simply wanted his advice in connection with the roof extension, since he had previously given them assistance and advice.
While Mr. Bonstaff was at work at his regular job, it appeared to him that it was going to rain. He telephoned his wife to call Plaintiff and ask him to come to their home and take such steps he considered necessary to protect their home from the threatening rain. There was an opening in the roof, where Mr. Bonstaff had been working, and he wanted Plaintiff to close the hole and cover it, so that water would not enter the building.
At Mrs. Bonstaff’s request, Plaintiff went to the Bonstaff residence, ascended a ladder to the roof from which he fell and suffered the injuries complained of. Plaintiff was alone on the roof at the time and was unable to state with any degree of certainty just how or why he fell.
Plaintiff testified he had been in the contracting business for over 30 years at the time he had this accident; and confirmed that Mrs. Bonstaff requested him to go to the Bonstaff home to close the hole in the roof. He went up the ladder to get on the roof, saw the hole, and fell when he *501 took a few steps from the hole in the roof. He testified that his fall occurred as follows :
“A. So, I imagine the day before — like he said, he took maybe a foot and half or two foot of sheeting out of the roof, and there had a hole maybe 6 or 7 foot by almost two foot right over the ceiling in the living ' room, and Mary Ann came on St. Claude and asked me could I come over there and close it. Anyway, just to keep the water from coming( into the living room. I followed her right down, walked up the ladder, got to the hole, decided to come back down, and that is when I hit a piece of sheet and ‘blum’ that was it.”
“A. I remember going up to the roof, and like — I must have told myself that I better get some felt paper or drop cloth, and I made a backward step to turn around. When I did, I hit one of those boards and it threw me, 'bump.’ ”
On cross-examination he testified:
“Q. As you turned around to go back down the ladder, that is when you fell?
“A. That’s right. I stepped on something loose, and after I decided that it must have been the cord, *
Plaintiff admittedly was a contractor with over 30 years experience. During that time he had on many occasions worked on the roofs of buildings under construction, and should have appreciated the dangers of walking on a roof without taking precautions to avoid falling.
The primary factor to be considered in determining whether a person was negligent is that person’s own experience in the field of work he was performing at the time he was injured. In Munson v. Mistretta, La.App., 29 So.2d 402, a plasterer, with 25 years experience, fell from a scaffold when one of the boards forming the floor of the scaffold broke. There was a dispute as to whether the scaffold had been erected by the defendant or by the plaintiff himself, but the court found it unnecessary to resolve that question. The court held that, even assuming that defendant had erected the scaffold, and the scaffold was in fact defective, the plaintiff, in view of his many years of experience, should have known that the scaffold might have been weak; and was negligent in failing to inspect the area where he was standing, and take proper action for his own safety.
In Radford v. Gibert, La.App., 12 So.2d 612, plaintiff had been employed to demolish a building and was in the process of dismantling a slate roof when he fell. The evidence revealed that plaintiff slipped from the roof of the building when a section of loose slate started to slide. Plaintiff was apparently standing on the loose slate, and both he and the roof materials slid down the inclined roof and off of the side of the building. The court indicated that the very fact that plaintiff was in the business of demolishing buildings was, in and of itself, sufficient evidence that he should have been aware of the possibility of his falling because of loose materials on the roof.
In the case of Turner v. Continental Southern Lines, Inc., La.App., 161 So.2d 139, cert. denied, 246 La. 83, 163 So.2d 359, the plaintiff fell through the roof of a shed when he was walking across the shed roof toward the roof of the main building adjacent thereto, where he was making repairs. Plaintiff was an experienced roof repairman for approximately two years. The court held that he was contributo rily negligent in walking across the shed roof when he could or should have known that the roof was insufficient to support his weight.
In the case of Foster v. American Oil Company, La.App., 172 So.2d 334, cert. denied, 247 La. 1007, 175 So.2d 299, decided by this court, plaintiff was employed by a scrap metal company to demolish certain *502 unusable oil storage tanks on the defendant’s premises. The defendant had sold the tanks to a scrap dealer. Plaintiff was working on the top of one of the tanks when it collapsed beneath him and he was injured. Plaintiff contended it was the duty of the defendant to give him a warning of the danger of working on the tanks. This court held:
“The nature of the transaction herein can give rise to no duty on the part of the defendants to warn plaintiff of the condition of the tanks. * * * The very nature of this transaction implies this. * * *” 172 So.2d at 336-337.
This case is also governed by the rule of law stated in Spears v. American Fidelity & Casualty Company, Inc., La.App., 123 So.2d 513, recently affirmed in Carter v. Travelers Insurance Company, La.App., 176 So.2d 176:
“There is an abundance of jurisprudence plainly to the effect that where a person exposes himself to a known danger, he assumes the risk and is guilty of contributory negligence if injured.” 176 So.2d at 177.
Since the Plaintiff’s injuries were due solely to his own negligence, and not to any negligence of the Bonstaffs, both they and their liability insurer are without any liability for Plaintiff’s injuries.
This is clearly established by Plaintiff’s own testimony quoted verbatim above:
“A. I remember going up to the roof, and like — I must have told myself that I better get some felt paper or drop cloth, and I made a backward step to turn around. When I did, I hit one of those boards and it threw me, ‘bump.’ ”
The judgment of the district court is reversed, and judgment rendered in favor of Defendants and against Plaintiff dismissing Plaintiff’s suit at his cost:
Judgment reversed.