REGAN, Judge.
The plaintiff, Kenneth Rau, filed this suit against the defendant, Sun Insurance Company of New York, the liability insurer of Earl Cortie, endeavoring to recover the sum of $42,983.98, representing damages for personal injuries which he asserts he incurred as the result of “falling” from the roof of Cortie’s residence.
The defendant answered, denied the negligence of Cortie, and then asserted that the plaintiff’s fall was caused entirely by his own negligence. In the alternative, it pleaded that the plaintiff was guilty of contributory negligence and voluntarily assumed the risk involved in the activity in which he was engaged when he was injured.
After a trial on the merits, the lower court rendered judgment in favor of the plaintiff for $21,765.10. From that judgment, the defendant has prosecuted this appeal.
The record discloses that the defendant’s insured sustained substantial roof damage to his home on September 9, 1965, as the result of Hurricane Betsy. The defendant’s insured, Cortie, decided to repair the roof himself because he wanted to install a better roof on his home than that which had been damaged in the storm. In order to achieve this purpose, he requested the plaintiff to assist 'in the repair of the roof.
When the plaintiff arrived at the Cortie residence on the morning of November 13, 1965, Cortie, his two sons, John and Ernest, and a neighbor, Lester Drews, were already working on the roof. The plaintiff, upon ascending to the roof, began to nail down new pieces of wood in place of those which had been damaged and removed by the other men. He was wearing an “apron” commonly used by carpenters to hold nails, and when he had used all of the nails in the apron, he walked across the roof some distance from the spot at which he was working and refilled the pockets of the apron with nails. He walked back toward the area where he had been working, and as he approached it his foot slipped and he fell from the roof sustaining substantial injuries. He testified that all he knew about what caused him to fall was that he was walking near the edge of the roof and when he put his foot down he slipped on some object, the identity of which he did not know. When asked what he slipped on, he stated that it could have been a piece of sheathing, a nail, sawdust, or maybe even the “sawline”. In any event, the record is completely devoid of any evidence of an object having been placed in his path between the time he left the area where he had been working and the time he returned with a replenished supply of nails.
The plaintiff had begun work at about 8:00 A.M. and had been so engaged between two and three hours when the accident occurred. He testified that when he walked to get the nails he merely stood up and walked on the slanted roof, without bothering to hold on to anything or to stoop over to avoid falling. The record discloses that another man who was working on the roof with him, Drews, suggested to the plaintiff that he sit or kneel while working since it was dangerous to stand while driving nails. The plaintiff declined to accept Drews’ suggestion because it was, in the plaintiff’s opinion, easier for him to work standing up.
We are convinced that the record is devoid of any evidence which would even tend to reveal any negligence on the part of the defendant’s insured. The plaintiff merely related that he fell from the roof, but he could not prove that this fall was occasioned by any act or omission on the part of Cortie or anyone for whom Cortie would be vicariously liable. Therefore, it is quite obvious that the plaintiff has completely failed to sustain his burden of proving negligence on the part of the defendant’s insured.
*483 The plaintiff also predicated his suit in part on the rationale of Civil Code Article 670, which reads:
“Art. 670. Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.”
In view of the fact that the roof in question was damaged by an act of God, and since the plaintiff was engaged in helping its owner keep his building “in repair” when he was injured, it is very doubtful that the above article is applicable to the facts hereof. In any event, we are convinced, assuming arguendo the applicability of this article, that the plaintiff voluntarily assumed the risk involved in walking upon the roof which was known to have been damaged by a storm. In Romano v. Bonstaff,[1] the facts of which are remarkably similar to this case, we reasoned that an individual who voluntarily climbs upon a roof to effect repairs thereto assumes the risk inherent in such action and cannot recover for any injuries incurred as the result of falling therefrom. In the Romano case, we pointed out that the judges of this state have long reasoned that where a person exposes himself to known danger, he voluntarily assumes the risk and cannot recover for injuries resulting therefrom.[2]
The plaintiff endeavors to distinguish the Romano case on the nebulous theory that its rationale applies only to one thoroughly experienced in construction and carpentry work, and that it has no application to an individual who is a novice in this trade category. The Romano case involved a plaintiff who had some thirty years experience in construction and carpentry, and this was simply mentioned by the author of the opinion to further emphasize that he voluntarily assumed the risk involved in climbing upon the roof of the defendant’s home. However, nowhere in the opinion did the author restrict the rationale thereof to persons experienced in carpentry work. On the contrary, it is quite obvious that any average, reasonable man would be aware of the dangers inherent in climbing upon the roof of a two story building. The record discloses that the plaintiff was clearly aware of the risk, had been forewarned of walking upright by Mr. Drews, and that he voluntarily assumed the risk involved therein. Under these circumstances, there can be no recovery under the rationale emanating from Article 670 of the Civil Code.
For the foregoing reasons, the judgment of the lower court is reversed, and judgment is now rendered in favor of the defendant, Sun Insurance Company of New York, and against the plaintiff, Kenneth Rau, dismissing his suit.
The plaintiff is to pay all costs incurred herein.
Reversed and rendered.
ON MOTION TO DISMISS
The appellee’s motion to dismiss the appeal herein and to remand this suit to the lower court for rendition of a judgment separate in form from the reasons therefor is hereby denied. The rationale of Article 1918[1] of the Code of Civil Procedure relates only to matters of form, and does not affect the substance of the judgment. Since he neglected to move to remand the case before argument and before the rendition of the opinion of this *484 Court, appellee voluntarily acquiesced in the purported defect in the form of the lower court’s judgment and has thereby waived his right to complain thereof.
The case of Deason v. State Farm Mutual Automobile Ins. Co.[2] cited by appellee, is not applicable to this case, since the motion to remand was made therein before argument and before rendition of the Court of Appeal’s opinion. To order a remand at this stage of the proceeding would be a vain and useless gesture since the substance of the dispute and the result in this Court would in no way be altered or affected thereby.
MOTION DENIED.

. La.App., 198 So.2d 499 (1967).

. See also Spears v. American Fidelity and Casualty Company, La.App., 123 So.2d 513 (1960) and Carter v. Travelers Insurance Company, La.App., 176 So.2d 176 (1965).

. “A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment.”

. La.App., 204 So.2d 428 (1967).