JULIAN E. BAILES, Judge Pro Tern.
This is an action in tort. The plaintiff was injured while employed as an oiler-driver on a 55 ton hydrocrane at a jobsite in Pointe Coupee Parish, Louisiana. From an adverse judgment in the district court, the plaintiff has appealed. We affirm.
The defendants are: Henry Padgett, the operator of the hydrocrane on which the plaintiff was injured; James A. Teague, executive officer of James A. Teague Rental Equipment, Inc., and its insurer, Highlands Insurance Company; John *513 Hennes Trucking Company, which rented the hydrocrane from James A. Teague Rental Equipment, Inc., and its insurer, Zurich Insurance Company; Grove Manufacturing Company, the manufacturer of the hydrocrane; and Thurman Davenport, a supervising employee of John Hennes Trucking Company. Hendrickson Manufacturing Company, the manufacturer of the chassis on which the hydrocrane was mounted, was also named a defendant, however, it was dismissed from the suit on a declinatory exception to the jurisdiction of the trial court over the person of the defendant.
This case has been before us previously as a workmen’s compensation matter. Lambert v. James A. Teague Rental Equipment, Inc., 278 So.2d 544 (La.App. 1st Cir. 1973). There we noted that on April 9, 1971, the plaintiff was dispatched to a location near New Roads, Louisiana, by James A. Teague Rental Equipment, Inc., whose crane had been leased by John Hennes Trucking Company, Inc. Lambert’s responsibility was to drive the crane to the jobsite, assist in its setting up prior to the left and, thereafter, to maintain it until released. Also assigned with the crane on this job was its operator, Henry D. Padgett.
On the morning of the accident, Lambert drove the rig to the location and there met Padgett who had previously determined where the crane was to be placed. Lambert then maneuvered the machine into the desired position and got out of it to begin the setting up of certain balancing and bracing devices necessary to its operation. First to be rigged was a balancing mechanism called a counterweight. Next, he was to set the outriggers which are braces extending out from the chassis on each side of the vehicle. Padgett, in the meantime, had mounted the cab of the crane and had begun operating it.
With the help of Farrel O. Alford, a boilermaker present at the time, Lambert set the outriggers on the left side and then signalled Padgett by a circular motion with his hand extended over his head. According to testimony of Padgett this signal was for him to turn the boom around in order for the outriggers on the right side to be placed in position. This meaning of the signal was verified by Mr. Teague. However, Lambert testified that to him it meant that he, Lambert, was going to the opposite side. We accept Mr. Padgett’s explanation, as did the trial court.
Lambert and Alford then walked around the truck preparatory to setting the right outriggers. In so doing, the plaintiff then climbed up on the truck to remove a seventy-five (75) pound shoe for the outrigger base from its storage slot. The shoe apparently was stuck in the slot, and as Lambert and Alford were attempting to remove it, they suddenly heard the crane motor race. The plaintiff then saw the counterweight, coming toward them and he pushed Alford out of the way; however, he could not move himself in time and he was crushed in the pelvic area of his body by the counterbalance.
The trial judge found that the accident was due to the plaintiff’s negligence, thus barring his recovery. We affirm.
Considerable evidence was received in that court as to the safety precautions and regulations which are to be employed by the operator and oiler-driver of a crane such as this. Basic among those precautions is the rule that the oiler is never to get on the rig while it is running unless he is clearly directed to do so by the operator, and that he is to stay clear of the rig while it is moving. Further, that the oiler is to stay in view of the operator at all times as the latter is unable to see behind him because of the construction of the crane cab to his rear.
James A. Teague, whose corporation owns the crane, positively testified that his oilers and operators are daily cautioned by him as to these safety measures. Paul Hernandez, Jr., the assistant business man *514 ager of Lambert’s union, Operating Engineers Local 406, verified that these rules are stressed and that they are well known by members of the local.
The record in this matter reflects that Lambert was an experienced oiler-driver, having worked around cranes since the late 1950’s. As such, he was undoubtedly familiar with the basic safety precautions previously stated and should never have gotten on the rig without a definite understanding with the operator. Upon doing so, he assumed the risks inherent in that action, which are great. Clearly, anyone climbing on the rig to the rear of the operator and within the turning radius of the counterweight, risks being struck by that object.
It also appears that the plaintiff recognized this and admitted as much to Teague and Padgett. Both testified that while in the hospital and on subsequent jobs after his recovery, Lambert had stated to them that he had been careless and had gotten ahead of the operator. On page 207 of the transcript, we note this testimony by the plaintiff:
“Q. What I want to ask you, is do you remember now that you told him on at least one occasion that you just were not thinking at the time that you got hurt ?
A. I guess I did, I was just trying to do my job as fast as I could, sir. I can’t remember, I told Mr. Teague —that many years ago, I can’t say if I did or not, sir.
Q. You could have told him, you are not going to deny that you told him?
A. I could have, yes, sir.”
As noted in Romano v. Bonstaff, 198 So.2d 499 (La.App. 4th Cir. 1967):
“The primary factor to be considered in determining whether a person was negligent is that person’s own experience in the field of work he was performing at the time he was injured * *
Further, where a person leaves a position of safety and places himself in a position of known danger, as did the plaintiff here, and he is thereafter injured by one of the risks of which he is aware, he has assumed the risk of that danger and is guilty of negligence. Jordan v. Fidelity and Casualty Company of New York, 259 So.2d 442 (La.App. 3rd Cir. 1972) and authorities cited therein.
The witnesses who had knowledge of this incident uniformly testified that the actions of Lambert immediately prior to this accident were dangerous and that he was necessarily aware of that danger. The plaintiff clearly violated a rule of occupational safety of which he had knowledge for years. Such action on his part bars his recovery for the injuries which he sustained in this unfortunate accident.
For the foregoing reasons, the judgment is affirmed at appellant’s cost.
Affirmed.