152 So.2d 119 (1963)
Frank BEST, Jr., Plaintiff-Appellant,
v.
J & B DRILLING COMPANY, Inc., et al., Defendants-Appellees,
General Insurance Company of America, Intervenor-Appellant.
No. 817.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1963.
Rehearing Denied May 1, 1963.
Certiorari Refused June 14, 1963.
*120 Jacque Pucheu, Euncie, for plaintiff-appellant.
Plauche & Plauche, by A. L. Plauche, Lake Charles, for intervenor-appellant.
Edgar Perkins, DeQuincy, for defendant-appellee.
Cavanaugh, Hickman, Brame & Holt, by Meredith T. Holt, Lake Charles, for defendant-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
Plaintiff filed this action in tort for damages which he sustained resulting from an accident which occurred on a drilling rig owned and operated by J & B Drilling Co., Inc. Made defendants were J & B Drilling Co., Inc. (hereinafter referred to as J & B), and its insurer, Travelers Insurance Company.
After a lengthy trial, the trial court held that plaintiff's sole remedy was under the Workmen's Compensation Act of this State, and accordingly dismissed his suit. This appeal followed.
In his petition, plaintiff alleged that on December 2, 1960, he was working for Helen Brown as a machinist; that several days prior to December 2, 1960, J & B had plaintiff's employer repair an air compressor used on a drilling rig owned by it; that on the above date plaintiff was sent by his employer, together with another employee, to an oil rig owned by J & B for the purpose of checking said air compressor; that the compressor was delivered to the well site and was installed by employees of J & B. After said installation, plaintiff climbed upon said air compressor to check the unload valve; that while plaintiff was checking the compressor, it exploded, causing him severe injuries. Plaintiff invoked the doctrine of res ipsa loquitur, and pleaded, alternatively, that if the doctrine was not applicable, the employees of J & B were negligent, which negligence consisted of:
1. Mishandling said air compressor causing oil to get in the valves resulting in the explosion;
2. Negligently handling said compressor so as to cause the clogging of lines and the air compressor to explode; and
3. In failing to properly install said compressor so that it would not explode while plaintiff was standing on it.
Defendants filed an answer alleging that any rights which plaintiff may have are exclusively under the provisions of the Workmen's Compensation Act for the reason that the work done at the time of the accident was part of the trade, business and occupation of J & B. Defendants alleged alternatively that if the court should find that the proximate cause of the accident was the negligence of the employees of J & B, then plaintiff was contributorily negligent in the following respects:
1. He failed to keep a proper lookout;
2. He failed to make the proper repair on said compressor; and
3. He failed to follow normal and customary procedures while installing said air compressor.
Defendants also urged that plaintiff assumed the risk of his employment. Defendants *121 also pled in the alternative that at the time of the accident, plaintiff was an employee pro hac vice (for that particular occasion) of J & B.
Defendants filed a third-party petition against Brown. No trial was had on the third-party petition. The court tried only the principal demand.
The compensation carrier of Brown intervened, praying that it be allowed to recover for any compensation and medical paid or which might be paid in the future on behalf of plaintiff.
The air compressor which exploded in the instant case was manufactured by Westinghouse Electric Company. It had been sent by J & B to Brown on two (2) previous occasions for repairs. On the third occasion the compressor was sent to Brown, no repairs were made but the compressor was allowed to run for several hours. The shop foreman at Brown's, being satisfied that the compressor was functioning properly, sent the compressor to the well site. The compressor was delivered to the employees of J & B. Plaintiff also accompanied the truck driver who delivered the compressor. He was instructed by the shop foreman for Brown to check said compressor at the well site, particularly the lines and other attachments to the rig. After the compressor was installed on the rig by employees of J & B, plaintiff climbed on the compressor and instructed an employee of J & B to commence running the compressor at a slow speed. Shortly thereafter plaintiff signaled the driller to increase the speed to the normal rpm (revolutions per minute). The driller complied with plaintiff's request, and an explosion occurred. The head of the high pressure cylinder of the compressor was blow off, causing plaintiff the injuries for which he is suing.
The question for decision is whether, under the facts of this case, the action is one arising in tort or whether it comes under the workmen's compensation statute of this State.
LSA-R.S. 23:1061 reads as follows:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
Plaintiff's first specification of error is that the district court considered what other drilling contractors in the area did in the business with respect to repairing their equipment. In the case of Stansbury v. Magnolia Petroleum Company, (La.App., 1 Cir., 1957), 91 So.2d 917, the court said:
"We feel that welding is an essential and integral part of the business of a company engaged in the `exploration, production and disposal of oil, gas and other minerals.' We know, as a fact, *122 that all the major oil companies of this area engage welders and other workmen of a similar nature as their regular employees. We also know, as a fact, that any company owning oil derricks requires the services of welders for the maintenance and repair of their derricks. And for such maintenance and repair, they have welders in their regular employment."
The finding by the trial court that J & B and others in the same trade or business in the area repaired their own equipment and maintain such tools as are necessary to repair compressors and other machinery and equipment employed by them on their drilling rigs, is substantiated by the testimony of Harold Dunham, an employee of J & B.
Plaintiff contends that the work done by Brown on the J & B compressor was a major overhaul, particularly since it involved machine work on a lathe. The district judge has answered this contention in his written reasons for judgment by saying:
"* * * Unquestionably, drilling contractors are not equipped with lathes to reface valve seats. However, there was considerable testimony to the effect that instead of refacing the valves they could have been replaced through a valve kit just as easily and economically as the refacing work that was done in this instance by H. Brown Machine Shop. I do not believe there was much dispute about this. It appeared that H. Brown simply preferred to reface the valves, because it had the machinery in its shop to do such work. But they had also refaced valves for other companies in connection with such equipment. In this case the compressor was sent to H. Brown Machine Shop simply to be fixed so that it would work properly, and certainly there was no evidence introduced which would indicate that these valves had to be refaced rather than replaced. The replacing of the valves could have been done by J & B Drilling Company's own employees, and there is evidence that such work is generally done by drilling companies in this area.
"Furthermore, it is noted that Mr. Best did no part of the machine work on these valves. While he was a machinist by trade, he was also a mechanic, and his specific duties on the occasion of this accident were to go to the rig and check there to see if there was not something wrong with the lines to which the compressor was attached, and particularly the unloader control valve, which were located on the rig and were not taken to the machine shop for repair. Certainly the checking and repairing of the lines and adjustment of the unloader control valve were part of the regular business of J & B Drilling Company."
In Thibodaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852, the Supreme Court had under consideration an interpretation of LSA-R.S. 23:1061. The Court held that where a company was engaged in drilling oil wells and employed an independent contractor to work over an oil well, and later engaged another independent contractor to fish out lodged tools, the independent contractors were employed to do work which was a part of the "business, trade or occupation" of the company, and the remedy provided by the workmen's compensation act for injuries sustained by the employees of such independent contractors was exclusive.
This Court is of the opinion that the judgment of the district court holding that the only remedy afforded plaintiff under the facts of this case is to recover workmen's compensation payments under the provisions of LSA-R.S. 23:1061 is correct.
Having reached the above conclusions, there is no need to discuss the doctrine of res ipsa loquitur invoked by plaintiff, or the other defenses advanced by defendants.
Plaintiff next complains that the order of the judge, revoking a previous *123 order wherein plaintiff had been allowed to file the suit originally in forma pauperis, was not supported by the evidence. On this point the record shows that plaintiff owns his home, on which there remains an unpaid balance of approximately $850.00. Plaintiff also owns the furniture in his home. He has an interest in a business; that he is earning in excess of $85.00 per week; and that he owes medical bills because of the accident and the operation of a son in Houston, Texas. The trial courts are granted much latitude in matters of this kind. We see no reason for disturbing the ruling of the trial court revoking its previous order.
For the reasons assigned, the judgment of the district court is affirmed. Plaintiff to pay the costs of this appeal.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.