222 So.2d 887 (1969)
Billy M. ALLEN, Plaintiff-Appellant,
v.
UNITED STATES FIRE INSURANCE COMPANY et al., Defendants-Appellees.
No. 11153.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1969.
On Rehearing May 27, 1969.
Horace M. Bickham, Jr., Vivian, Hal V. Lyons, Shreveport, for appellant.
*888 Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for appellee.
Before GLADNEY, DIXON and PRICE, JJ.
GLADNEY, Judge.
Plaintiff, Billy M. Allen, has appealed the trial court's granting of a summary judgment on defendant's motion entered in the district court.
Plaintiff, a welder, was employed by W. C. Allen Welding & Fabricating on October 17, 1967 when he was directed by his employer to go to a compressor station owned by La-Tex Oil Company to perform some welding work on piping. Allen was in the act of cutting a hole with an acetylene torch in a steel plate which he had welded onto the end of a pipe the previous day when an explosion occurred at the place where he was cutting. Apparently a certain amount of gas had collected in the pipe. When it ignited the explosion knocked Allen from the scaffold from which he was working and onto the concrete floor, causing him serious and disabling injuries. Plaintiff then filed this tort action against La-Tex and its liability insurer, United States Fire Insurance Company. Availing itself of the provisions of LSA-R.S. 23:1101 et seq., the Coal Operators Casualty Company seeks reimbursement of workmen's compensation payments previously paid to Allen.
Defendant filed a motion for summary judgment asserting that as a matter of law plaintiff may not recover against it in tort, as the only liability of La-Tex, if any, is for workmen's compensation.
A motion to dismiss the appeal was filed by appellee in this court on the ground that the devolutive appeal bond was executed in the amount of $100 although the trial judge had ordered bond in the amount of $150. Defendant contends that it is entitled to have this appeal dismissed under LSA-C.C.P. Art. 2161 which provides for dismissal in the event of irregularities imputable to the appellant. We find this article is not controlling and rule that defendant's motion to dismiss the appeal must be denied. LSA-C.C.P. Art. 2088 provides after an appeal has been perfected the trial court retains jurisdiction "to consider objections to the * * * sufficiency of the appeal bond, and permit the curing thereof, in accordance with Article 5124; * * *" Also Article 5123 declares that any party wishing to test the sufficiency of an appeal bond shall rule the party giving such security into the trial court to show cause why the security should not be ruled insufficient. Article 5124 prescribes the delay and the manner in which an appellant may furnish supplemental security following an order therefor. Thus, an appeal may not be dismissed for insufficient security unless the party providing such bond is given an opportunity to furnish a new or supplemental bond after proper proceedings begun in the trial court. Wilks v. Allstate Insurance Company, La.App., 191 So.2d 663 (3rd Cir. 1966). The trial court being the proper forum in which to test the security offered for an appeal, this court has no jurisdiction to determine such matters. Cameron v. Reserve Insurance Company, 233 La. 704, 98 So.2d 159 (1957); Reid v. Blanke, La.App., 200 So.2d 132 (4th Cir. 1967); Succession of Roth, 230 La. 33, 87 So.2d 719 (1956); Blaize v. Cazezu, 208 La. 1081, 24 So.2d 147 (1945). For the aforesaid reasons, defendants' motion to dismiss this appeal is refused.
Appellant argues the trial judge erred in sustaining the motion for a summary judgment and dismissing his suit. The motion for summary judgment, as provided for in LSA-C.C.P. Arts. 966-967 is a procedural device. Art. 966 requires that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to *889 judgment as a matter of law." In passing upon a motion for summary judgment, a court's function is not to pass on the merits of the particular issues raised, but to confine its determination to whether or not there exists a genuine material issue of fact. Acadia-Vermilion Rice Irrigating Company, Inc. v. Broussard, La.App., 185 So.2d 908 (3rd Cir. 1966). The mover has the burden of showing that there is no material issue of fact. All doubts as to this question should be resolved against granting the motion. Welsh Southern Oil Company, Inc. v. Scurlock Oil Company, Inc., La.App., 201 So.2d 376 (3rd Cir. 1967); Collins v. State Farm Mutual Automobile Insurance Company, La.App., 188 So.2d 460 (3rd Cir. 1966).
The defendant in this case is engaged in the pumping and reduction of hydrocarbons to possession and in this business operates a number of oil wells, compressor stations, and pipelines. Defendant employs a number of maintenance personnel for the purpose of repairing and maintaining this oil production business. He also employs a number of welders in this connection. In this particular instance, the defendant was engaged in replacing an old compressor unit with a new unit in one of defendant's pumping stations.
The Louisiana Workmens' Compensation Act (LSA-R.S. 23:1061) provides that "where any person * * * undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person * * * for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work * * *, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; * * *" Our jurisprudence has consistently recognized that the purpose of this section of the statute is to prevent principals from contracting out their work in order to evade liability for workmen's compensation benefits to employees actually utilized in the principal's trade, business or occupation. Meche v. Farmers Drier & Storage Company, La.App., 193 So.2d 807 (3rd Cir. 1967) and authorities cited therein. Also Doucet v. W.H.C., Inc., La.App., 212 So.2d 267 (3rd Cir. 1968).
Thus, if the record before us discloses that the activities of La-Tex at the time of plaintiff's injury were a part of its trade, business or occupation, plaintiff's exclusive remedy is for workmen's compensation. Thibodaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852 (1950); Best v. J & B Drilling Company, La.App., 152 So.2d 119 (3rd Cir. 1963); and Ball v. Kaiser Aluminum & Chemical Corporation, La.App., 112 So.2d 741 (Orl. Cir. 1959).
Accompanying the motion for a summary judgment an affidavit was attached in which H. Dale Washington deposed:
"That he does business under the trade name of LaTex Oil Company; that his business consists of operating oil wells, some of which are located in Caddo Parish, Louisiana; that his business entails the production of oil from said wells and the maintenance of the equipment necessary and required for such production; that an integral portion of his business includes the maintenance of his said equipment and requires the employment of welders by him; that all of the work upon his said equipment is a portion of his trade, business and occupation in operating his said business and is a usual portion thereof."
Subsequently the plaintiff filed his affidavit in which he declared:
"* * * that on October 17, 1967, he was injured in an explosion on premises owned by La-Tex Oil Company, he was working on the installation of a compressor at La-Tex's Compressor Station; that the compressor was used for the purpose of re-cycling gas under compression, produced and saved from nearby *890 wells, back into the ground to supply the force necessary to lift oil from the natural reservoir to the surface of the ground; the compressor which La-Tex had used theretofore in his operations was being replaced by this new compressor since the old one no longer functioned properly and could not be further repaired or maintained. It was this new construction or reconstruction of installing the new compressor which he was doing when the explosion occurred and he was injured. Affiant knows that La-Tex's business is not installing compressors; his business is operating oil wells."
Plaintiff's prime contention is that he was engaged in welding work in connection with the installation of a compressor to replace one which had been used in the recycling of gas; and that the construction or replacement of the compressor was a specialized operation forming no part of the trade, business or occupation of an operator of oil wells. Further, it is argued that highly specialized personnel are required in such work which is customarily contracted to specialists in that particular calling. It is disclosed, however, that in this instance La-Tex was engaged in replacing its own compressor. Further, we observe that the plaintiff was not engaged in any unusual or specialized type of welding but that the particular work being performed by Allen appears to have been an ordinary welding job on pipe. The distinction which plaintiff seeks to make is that the welding being done at the time was related to and a part of the construction of the compressor.
In his work on Louisiana Workmen's Compensation, Law and Practice, page 153, Wex Malone, in his discussion concerning the liability of a principal to a contractor's employee, observed:
"If the business is one whose operation normally includes a wide variety of work in the development or severance of natural resources, it cannot build or install its own structures or equipment through contractors and escape compensation liability, since installations of this kind are usually done by the principal directly. This is particularly true of oil producing enterprises."
Several cases illustrate the general principle recognized by Professor Malone. Thus the principal has been held liable to the employees of contractors hired to haul pipe and materials for the erection of oil wells. Seabury v. Arkansas Natural Gas Corporation, 14 La.App. 153, 127 So. 25 (2nd Cir. 1930); contractors engaged to weld oil production equipment, Dandridge v. Fidelity & Casualty Company of New York, La.App., 192 So. 887 (2nd Cir. 1939); to pull casings from wells, Turner v. Oliphant Oil Corporation, La.App., 200 So. 513 (2nd Cir. 1940); or to fish out lost tools, Thibodaux v. Sun Oil Company, La. App., 40 So.2d 761 (1st Cir. 1949). In the Dandridge case the contractor's employee was instructed to and had welded the mud rim on a boiler to stop a leak when he was struck by the smokestack of a boiler being installed. In Best v. J & B Drilling Company, La.App., 152 So.2d 119 (3rd Cir. 1963) the court held that the repair of compressors on drilling rigs was a part of the trade, business or occupation of the drilling company and the employee's exclusive remedy after being injured while repairing a compressor which exploded was under the Workmen's Compensation Act. Therein, the plaintiff charged error to the trial court's ruling as to what other drilling contractors in the area did with respect to repairing their equipment. This contention was answered by reference to the case of Stansbury v. Magnolia Petroleum Company, La.App., 91 So.2d 917 (1st Cir. 1957) wherein the court said:
"We feel that welding is an essential and integral part of the business of a company engaged in the `exploration, production and disposal of oil, gas and other minerals.' We know, as a fact that all the major oil companies of this area engage welders and other workmen of a similar nature as their regular employees.

*891 We also know, as a fact, that any company owning oil derricks requires the services of welders for the maintenance and repair of their derricks. And for such maintenance and repair, they have welders in their regular employment." [191 So.2d 917, 919]
Doucet v. W.H.C., Inc. supra, reports an action by a construction company employee in tort for injuries sustained while working on oil company equipment. At the time of his injury plaintiff was doing repair work when injured by a gas explosion. The principal was engaged in repairing a salt water pump which the court held was a part of its trade, business or occupation. Hence the appellate court affirmed the judgment of the trial court sustaining a motion for summary judgment.
Much progress has been made in the production of oil and other hydrocarbons over the last decade. It is essential for an oil company to use efficient methods of production and it must have the necessary equipment for this purpose. It is not uncommon for many oil companies to utilize compressors as in the instant case. We find no reason to make a distinction in this case between the installation of compressor equipment and the maintenance thereof.
The undisputed facts in the instant case disclose that the business of La-Tex is concerned with the production of oil from its wells and the maintenance of the equipment necessarily required for such production. The efficient production of said wells required the use of a compressor for the purpose of recycling gas back into the ground to supply the force necessary to lift oil from the natural reservoir. At the time of plaintiff's injury La-Tex was replacing its old compressor with a new one. Plaintiff's particular work was to perform some welding work on piping which was already in place and contained gas. It would be unrealistic to deny that the installation and maintenance of the compressor in question was an essential and integral part of the activities of La-Tex in the production of oil.
We therefore conclude that the welding being performed by Allen, whether it was related to or connected with the installation or maintenance of a compressor, was work being performed as a part of the business, trade or occupation of La-Tex.
The judgment is affirmed at appellant's cost.

ON REHEARING
PRICE, Judge.
A rehearing was granted to reconsider whether there was a genuine issue of material fact which would necessitate a remand of the case for a trial on the merits.
After further study of the record we are of the opinion that the conclusion reached in our original opinion is correct.
It is, therefore, ordered that the judgment in our original opinion be reinstated.