**Charles W. HOWARD, Jr.**

v.

**VULCAN MATERIALS COMPANY.**

**Civ. A. No. 71-122.**

United States District Court,
M. D. Louisiana.

Dec. 7, 1973.

Thomas E. Cooper, Jr., Rayville, La., Jack C. Benjamin, Kierr, Gainsburgh & Benjamin, New Orleans, La., for plaintiff.

Calvin E. Hardin, Jr., Emile C. Rolfs, III, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for defendant-third party plaintiff, Vulcan Materials Co.

Sam J. D'Amico, D'Amico & Curet, Baton Rouge, La., for third party defendant-third party plaintiff, AAA Contracting Co., Inc.

William A. Norfolk, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for third party defendant-intervenor, The Travelers Ins. Co.

E. GORDON WEST, District Judge:

This matter is before the Court on the motion of the defendant, Vulcan Materials Company (Vulcan), for summary judgment. Vulcan is a chemical plant characterized by its mechanical manager, Lewis J. Fairbanks, as "a chlorinated solvents plant." It makes "industrial solvents by chlorinating hydrocarbons." In some of their purifying processes they use a carrier solvent known as epichlorohydrin, and this is used particularly in the ethane units that produce

III trichloroethane, which comprises some 12 percent of the total plant production. Epichlorohydrin is a liquid, is toxic, and is somewhat dangerous to handle. Vulcan, at the time here involved, purchased that product in 55 gallon drums. After the contents of the drums were used, the empty drums were thrown in a pile, later to be crushed or flattened and buried with other waste material in a large hole or in a land-fill area. In the course of operating this plant, Vulcan employed outside companies to perform some of the maintenance work around the plant. This was generally done by issuing work orders to independent contractors to perform certain jobs on a cost of labor and material basis. One of the companies so employed was AAA Contracting Company (Triple A), a third party defendant herein. From time to time Triple A was issued work orders to do such things as install necessary drainage systems, including pipes and pumps; haul off trash from the plant grounds; dispose of waste material by burying it in designated areas on Vulcan's property; spread shell on roadways, etc. Triple A had heavy equipment which it used to perform these various jobs.

The plaintiff, Charles W. Howard, Jr., was an employee of Triple A. At the time of his injury he was operating a front end loader and was in the process of crushing or flattening empty 55 gallon drums so that they could be loaded on a truck and hauled to the place where they were to be buried. In order to crush the drums, he would simply drive the vehicle, which weighed about 50,000 pounds, and which ran on tracks rather than wheels, over the drums. In order to run over them, he sometimes had to drop the heavy front end bucket on them to partially flatten them before he could run the vehicle over them. On this particular day, when plaintiff was in the process of crushing a pile of drums about 12 feet high and about 40 feet in diameter, a drum full or partially full of epichlorohydrin had inadvertently been thrown in with the empty drums. As

the plaintiff ran the vehicle over the drums, this one broke and its contents spurted out on him causing the damage here complained of. This suit against Vulcan followed and Vulcan in turn called in Triple A as a third party defendant under an alleged warranty agreement. Vulcan has filed this motion for summary judgment contending that even though the plaintiff was an employee of Triple A at the time of his injury, he was nevertheless performing a part of the regular trade, business and/or occupation of Vulcan at the time of his injury and that hence his sole remedy against Vulcan is under the Louisiana Workmen's Compensation Laws (L.R.S. 23:1061). The only issue to be decided is whether or not the plaintiff was in fact engaged in the regular trade, business and/or occupation of Vulcan at the time of his injury so as to bring him within the coverage of the Louisiana Workmen's Compensation Act. If he was, he cannot maintain this suit against Vulcan. If he was not, he may maintain this suit in tort against Vulcan as an alleged third party wrongdoer. This motion has been thoroughly argued to the Court and has been exhaustively briefed. Depositions have been filed and all evidence necessary to a determination of this question has been submitted and reviewed. All parties have been given the opportunity to present evidence and countervailing evidence by way of affidavits, depositions, or other probative evidence, and the matter has been submitted on the record as it now stands. The defendant contends that there is no material issue of fact involved and that a summary judgment in its favor is in order. The plaintiff contends that the evidence submitted does raise a question of fact and that this should be determined only after a trial on the merits. But unlike the finding of the Fifth Circuit Court of Appeals in Cole v. Chevron Chemical Co., 427 F.2d 390, 394 (CA5–1970) the picture of Vulcan's operation, and the part the disposal of empty drums played therein, is crystal clear from the evidence presented

to the Court by both sides in connection with this motion for summary judgment. After due consideration of this record, including all of the evidence submitted by both sides, this Court concludes that there is no material issue of fact involved and that the defendant, Vulcan, is entitled to a judgment as a matter of law.

The essential facts are not in dispute. They are as set forth hereinabove. The only question left is whether or not, under Louisiana law, the work being performed by the plaintiff at the time of his injury constituted a part of the regular trade, business or occupation of Vulcan. We conclude that the uncontradicted evidence must lead to the conclusion that it was.

There is no question from the evidence in this case that the use by Vulcan of epichlorohydrin was an essential part of its trade, business or occupation. When it purchased this material in drums, there is no question but that the empty drums had to be disposed of or at least removed from the plant from time to time lest the Vulcan employees find themselves knee deep in empty drums. To permit the empty drums to accumulate on the plant property beyond a certain limit would constitute a hazard and would ultimately interfere with the operation of the plant. It was just as necessary for the efficient operation of its plant for Vulcan to remove this waste material as it was for them to remove other unwanted by-products of their chemical operation. Most of the other by-products were in the form of hot liquids which they disposed of by running them under water in what was known as a Hex pit where it solidified. After it solidified in this intermediate pit, it was removed and buried along with other trash, such as crushed 55 gallon drums, in a land-fill area or in a large hole dug for that purpose. Triple A also performed the task, from time to time, of removing the solidified waste from the Hex pit and burying it. As stated above, it would have been dangerous not to remove these empty drums. If left piled up, they rust and the residual left in them leaks out, posing both an ecology problem and a hazard to the health of those working in the vicinity of the empty drums. The disposal of these drums was an essential part of Vulcan's business. When they did not have Triple A or some other contractor on the plant grounds with equipment that could be used for that purpose, Vulcan did it with their own employees. Vulcan even rigged up a fork-lift truck with which to perform this task when they had to do it with their own employees. On the top of the lift they placed four drums filled with a heavy substance for weight and then simply dropped the lift on the empty barrels to crush them. This process was time-consuming and expensive but Vulcan did it with its own employees as a necessary chore in the conduct of its business. They also performed this task by use of a crane belonging to Vulcan. They used the rear stabilizing feet to drop on the drums to crush them. This also was expensive but necessary when they did not have someone on the premises with other suitable equipment with which to dispose of the drums. The evidence is clear and uncontradicted that in the absence of a contractor such as Triple A, Vulcan, with its own equipment and manpower performed this task as a necessary part of their operation. Section 6 of the Louisiana Workmen's Compensation Act, LSA 23:1061 provides that any person (referred to as a principal) who contracts out work which is a part of his "trade, business, or occupation" is liable for workmen's compensation to any of the contractor's employees who are injured while engaged in such work to the same extent as if the contractor's injured employee was one of the principal's own employees. And of course this same provision limits the remedy of such an injured employee, insofar as a claim against the principal is concerned, to his claim for workmen's compensation benefits. The Court in Cole v. Chevron Chemical Co., 477 F.2d 361, 365 (CA5–1973), reviewed the test to be used in determining whether or

not an employee was engaged in the regular "trade, business or occupation" of the principal as follows:

"The standard for determining whether a given activity performed by an independent contractor is part of a principal's 'trade, business, or occupation' is, to a degree, dependent upon the factual context of the case. The Louisiana courts in the early cases of Seabury v. Arkansas Natural Gas Corp., 1930, 14 La.App. 153, 127 So. 25, and Dandridge v. Fidelity & Casualty Co., La.App.1939, 192 So. 887, applied a two-pronged test based on business necessity *and* employment of similar workers. However, keeping in mind the policy that workmen's compensation law should be liberally construed regardless of whether the employer or employee is the party asserting coverage, the Louisiana courts in Turner v. Oliphant Oil Corp., La.App. 1940, 200 So. 513; Thibodaux v. Sun Oil Co., La.App.1949, 40 So.2d 761; Doucet v. W. H. C., Inc., La.App.1968, 212 So.2d 267; and Allan v. United States Fire Insurance Co., La.App. 1969, 222 So.2d 887, retreated somewhat from this two-pronged test. In these cases, the courts held that the fact that the principal did not have any employees engaged in a similar activity was not controlling *where* the work contracted out was so necessary to the principal's operations that, if it were not performed by the independent contractor, the principal would have to hire workers of its own to perform the task."

This same principle was followed in Leger v. Amerada Hess Corp., 479 F.2d 1250 (CA5–1973). Applying this standard to the evidence in this case, the conclusion is inevitable that the plaintiff was engaged in performing a part of Vulcan's regular trade, business or occupation at the time of his injury. When the work here involved was not performed by the independent contractor, it was absolutely necessary that it be performed by Vulcan's employees. Thus it was a necessary part of Vulcan's regular

trade, business or occupation. The test is not how often the work had to be done, but instead how necessary was the work to Vulcan's broader business activity. We conclude that the work being done by the plaintiff at the time of his injury was a necessary, integral part of Vulcan's trade, business and/or occupation, and that hence the plaintiff's sole remedy against Vulcan lies under the Workmen's Compensation Laws of the State of Louisiana.

For these reasons, an order will be entered herein granting the motion of Vulcan Materials Company for summary judgment and dismissing this case, including both the principal and the third party demand, in its entirety.