299 So.2d 499 (1974)
Daniel B. HUDSON
v.
AETNA CASUALTY INSURANCE COMPANY.
No. 5334.
Court of Appeal of Louisiana, Fourth Circuit.
July 24, 1974.
Rehearing Denied September 10, 1974.
Writ Refused October 18, 1974.
*500 Ralph E. Orpys and Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy (Harold J. Lamy), New Orleans, for Plaintiff-Appellant.
Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr. and Charles M. Lanier (Cyrus C. Guidry, New Orleans, of Counsel); Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, New Orleans, for Defendant-Appellee.
Young & Wilson, Robert J. Young, Jr., New Orleans, for Intervenor-Appellant.
Before REDMANN, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Plaintiff's tort suit against the Board of Commissioners of the Port of New Orleans (Dock Board) and its insurer was dismissed by summary judgment on the basis that the Dock Board was a principal within the contemplation of R.S. 23:1061 and that R.S. 23:1032 limited plaintiff's remedy against the Dock Board to compensation benefits. The summary judgment also dismissed the intervention by the workmen's compensation insurer of plaintiff's employer. Both plaintiff and intervenor appealed.
The sole issue on appeal is whether the Dock Board has established, sufficient for summary judgment purposes, that the work it contracted with plaintiff's employer to perform was part of the Board's trade, business or occupation.
The Dock Board had contracted with George A. Fuller Company to construct a new conveyer system and new storage facilities at the Board's bulk handling plant. Plaintiff was an iron worker employed by Conley Contractors, Inc., one of Fuller's subcontractors. His injury allegedly was caused by the negligence of a Dock Board employee on the premises.
In support of its motion, the Board filed an affidavit executed by its executive director. He asserted that the conveyer system formed part of the mechanical facilities for the use of the wharf, landing, sheds and other plant structures; that pursuant to R.S. 34:21 the Board had a duty to erect structures on the wharves and landings and to provide mechanical fixtures for use of the wharves and structures; and that since the Board had a duty to construct new facilities when necessary, the erecting of the facility was part of its trade, business or occupation. The director also stated the Board had an engineering and maintenance staff capable of performing the work being done by plaintiff at the time of his injury.
We hold these assertions insufficient to entitle the Board to a summary judgment as a matter of law. C.C.P. art. 966.
The construction of a new industrial plant facility is not necessarily the business of the operator of that facility. In Ball v. Kaiser Aluminum & Chemical Co., 112 So.2d 741 (La.App.Orl.1959) an employee of an electrical contractor was injured during the erection of an aluminum plant Kaiser was to operate. The court held Kaiser was not a principal because its business was not to erect the plant, but to operate the plant after construction. As to the contention that Kaiser employed numerous electricians capable of performing plaintiff's duties, the court observed that Kaiser and plaintiff's employer in the course of their respective businesses possibly engaged several employees who performed similar functions, but that fact did not make one company's work the trade, business or occupation of the other.
In Moak v. Link-Belt Co., 229 So.2d 395 (La.App.4th Cir.1969) the operator of a sugar refinery was sued in tort by several employees of contractors and subcontractors who had contracted to design, fabricate and install certain mechanical systems. The court held that while the refiner's business included necessary maintenance *501 and repair and occasional replacement of equipment, "(c)omplete redesign and reconstruction of the mechanical systems is not part of the operation of a refinery, and American did not make it part of their operation." (Emphasis supplied.)
In the present case the Board's affidavit does not indicate that it made construction of conveyer systems and storage facilities part of its actual business operations. However, the Board argues in substance that its statutory duty to construct mechanical facilities is the equivalent of its actually being in the business of erecting such facilities.
This argument ignores the purpose of the compensation act. Section 1061 was intended to prevent the operator of an industrial plant from evading compensation liability by farming out part of its regular operation, but this purpose is unrelated to the present situation, where the plant operator utilized a bona fide independent contractor to initially construct the facility it intended to operate in the course of its business.
R.S. 34:21 uses the word "duty," but actually grants authority. The statute simply authorizes the Board to undertake legally the construction of needed facilities for its own business operations and to use tax revenues for this purpose. By no stretch of the imagination does the statute authorize (or command) the Board to use public funds to engage in the business of constructing conveyers or storage facilities for the use of others. Since there was no assertion in the Board's affidavit that it actually made construction of these facilities for its own use a part of its actual business operations, we cannot conclude that such construction was the Board's business, in fact or in law.
The summary judgment is set aside, and the case is remanded for further proceedings.
Set aside and remanded.