Bradley BERGERON

v.

UNITED STATES of America et al.

Barbara Clostio SIMON, etc., et al.

v.

UNITED STATES of America et al.

PELICAN WELL SERVICE

v.

PARSONS–GILBANE et al.

RANGER INSURANCE COMPANY

v.

UNITED STATES of America.

UNITED STATES of America

v.

LOUIS RECORDS & ASSOCIATES, INC., et al.

HACKBERRY SHRIMP SHOP, INC.

v.

UNITED STATES of America.

Civ. A. Nos. 79–1261, 80–0333, 79–1276, 80–0451, 79–1296, 79–1299, 79–1303 and 79–1552.

United States District Court,
W. D. Louisiana,
Lafayette-Opelousas Division.

Aug. 12, 1980.

---

Patrick T. Caffery, David R. Dugas, Caffery, Oubre, Gibbens & Blackwell, New Iberia, La., for plaintiff Bergeron.

Charles R. Sonnier, Cooper, Sonnier, Ortego, Hebert & Woodruff, Abbeville, La., for plaintiff Simon.

Frances O. Allen, First Asst. U. S. Atty., Shreveport, La., Joseph DiStefano, Asst. Gen. Counsel, Dept. of Energy, James P. Klapps, Dorothea Beane, A. Burton Lee, Civil Division, U. S. Dept. of Justice, Washington, D. C., for United States.

Gerald Gaudet, Voorhies & Labbe, Lafayette, La., for Benton Casing Service.

Tim McNamara, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for Cactus Drilli.

Robert Clements, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., for La. Mud. Co.

Bernard McLaughlin, Jr., Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., for State Farm.

Dermot S. McGlinchey, McGlinchey, Stafford, Mintz & Hoffman, New Orleans, La., for Parsons-Gilbane.

Edmund E. Woodley, Woodley, Barnett, Cox, Williams & Fenet, Lake Charles, La., for Tam International, Inc.

Fred H. Sievert, Jr., Emmett Sole, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., for B. J. Hughes.

Reid K. Hebert and Andrew L. Plauche, Jr., Plauche, Smith, Hebert & Nieset, Lake Charles, La., for General Motors Corp.

Victor Koock, New Orleans, La., for International Hammer Services & Tidewater International.

Meredith T. Holt, Lake Charles, La., Michael G. Terry, Vinson & Elkins, Houston, Tex., for Gulf Interstate Engineering Co.

Dennis J. Vidrine, Lafayette, La., for Louis Records and Associates, Inc.

Raymond Morgan Allen and Randall K. Theunissen, Lafayette, La., for Patterson Services, Inc. d/b/a International Hammer.

J. B. Jones, Jr., Jones, Jones & Alexander, Cameron, La., Prentiss E. Cox, Houma, La., James H. Daigle, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for Pelican Well Service.

Jerry G. Jones, Jones, Jones & Alexander, Cameron, La., for Hackberry Shrimp Shop.

Joseph A. Brame, Lake Charles, La., for Commercial Union Ins. intervenor in Bergeron suits.

R. K. Christovich and A. R. Christovich, Jr., Christovich & Kearney, New Orleans, La., for Ranger Ins. Co.

RULING ON MOTION

PUTNAM, Senior District Judge.

Barbara Clostio Simon, individually and as tutrix of her minor children and also in her capacity as personal representative of the estate of her deceased husband, Clarence J. Simon, plaintiff in Suit No. 79–1276

(80–0451), and Bradley Bergeron, plaintiff in Suit No. 79–1261 (80–0333), sue the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671 et seq., for damages flowing from the death of Mr. Simon and personal injuries sustained by Bergeron in an explosion and fire which occurred on September 21, 1978, at the West Hackberry, Louisiana, oil storage facility established by the Department of Energy as part of the Early Reserve System of the Strategic Petroleum Reserve Plan. Jurisdiction in this court is not contested.

The United States has filed a motion to dismiss and alternatively for summary judgment, availing itself of the provisions of the Louisiana Workmen's Compensation Act, Section 6, LSA–R.S. 23:1061,[1] as applied to work undertaken by the United States on property owned by it lying "with-

in the exterior boundaries of any State." 40 U.S.C.A. § 290.[2]

For the purposes of this motion, we find the following facts to be uncontested:

1. Both Simon and Bergeron were employees of Pelican Well Service, Inc. and were working on a workover oil rig located at Cavern 6 of the West Hackberry storage site, on September 21, 1978.

2. Pelican Well Service, Inc. was under contract dated June, 1978, with the Strategic Petroleum Reserve Project Management Office, United States Department of Energy.[3]

3. On September 21, 1978, while Pelican was engaged in pulling 5½″ pipe from the well, a blowout, explosion and fire occurred allegedly causing the damages sued for in these suits.

1. LSA:R.S. 23:1061. "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

 Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

2. Title 40 U.S.C.A. § 290: "Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said contributed authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the Unit-

ed States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State, and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be.

 For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority aforesaid: *Provided, however*, that by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated: Provided further, That nothing in this section shall be construed to modify or amend the United States Employees; Compensation Act, as amended."

3. The contract required that insurance be provided naming the operator and DOE as additional insureds, and that cost of the insurance be, of course, added into the day work contract price. Such insurance is required in all government contracts as a matter of policy. See: 41 C.F.R. 1–10.502.1.

(4) The work being done at the time of the explosion and fire under the Pelican contract was work required to be done in the maintenance and operation of the storage facility designated as Cavern 6 at West Hackberry, and included pulling the 5½ inch pipe from the well leaving a $9^5\!/\!8''$ hole lined only with $9^5\!/\!8''$ casing to permit more effective use of Cavern 6. See affidavit of Donald Mazur, June 10, 1980. This storage facility is part of the storage facilities contemplated within the Strategic Petroleum Reserve Plan of the United States, carried out by the Department of Energy under close Congressional scrutiny.

The threshold question is whether or not the work being done by Pelican Well Service at the time of this accident was part of the ". . . trade, business or occupation . . ." of the United States, through the Department of Energy. Plaintiffs argue that in order to prevail in its Section 6 defense, the government must show that it has in fact engaged in the work done by the contractor in the regular course of its business, using its own employees. They rely upon *Hudson v. Aetna Casualty Insurance Company*, 299 So.2d 499 (La. App. 4 Cir. 1974), holding that it is not sufficient for a government agency to show that the enabling legislation authorized it to "construct" a facility when it in fact had never engaged in construction work for itself or the public as part of its actual business operations. Cf: *Duplechin v. Pittsburgh Plate Glass Company*, 265 So.2d 787 (La.App. 3 Cir. 1972), (fact that corporation was authorized to engage in certain activities by its charter could not be considered as controlling on the question of employer status under LSA–R.S. 23:1061, when it had in fact never engaged in such activities as part of its business.)

In *Hudson*, supra, because there was no showing in the Board's affidavit that it actually made construction of the facilities in question for its own use or for third persons a part of its actual business operations, summary judgment was improper and the case was remanded. On the other hand, in *Johnson v. Greater Baton Rouge Airport District*, 368 So.2d 206 (La.App. 1 Cir. 1979),

and *Richard v. National Surety Corporation*, 99 So.2d 831 (La.App. 1 Cir. 1957), the court found no difficulty in disposing of plaintiff's claims on motions for summary judgment in the one case and on a motion of no cause of action in the other. In *Johnson*, the work contracted out to plaintiff's employer was mowing the grass at the airport, a necessary but incidental part of the business of operating that facility, and, in *Richard*, plaintiff's employer had contracted with the City of Lafayette to make power line installations at the city's new electrical power plant. The erection, maintenance and operation of the city-owned power plant and its major power lines was, in fact, part of the regular trade and business of the City under authority expressly conferred by its Legislative Charter.

The Section 6 defense rule has been much belabored of late. *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65 (La. 5 Cir., 1980); *Lushute v. Diesi*, 354 So.2d 179 (La.1978); *Barnes v. Sun Oil Co.*, 362 So.2d 761 (La.1978); *Reeves v. Louisiana and Arkansas Railway Company*, 282 So.2d 503 (La.1973). Cf: *Vizena v. Travelers Insurance Co.*, 238 So.2d 238 at 241, 242 (3 Cir. 1970). In *Blanchard*, supra, the Court summarized the Louisiana rule as follows, viz:

"More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, *or* if it is not normally a part of his practices, then it is necessary to determine if others engaged in business similar to that of the principal customarily do this type of work *or* if it is an integral part of their business. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relation-

ship between the principal in question and his contractors' employees that of statutory employer and employee." (Emphasis supplied. 613 F.2d 65 at 71)

This test correctly sums up the Louisiana law on this point as it now exists. We see no reason to further extend this opinion by a detailed discussion of the remaining cases cited above, the *Blanchard* court having already done this.

That the defense afforded by LSA–R.S. 23:1061 is made available to the United States by the adoption of Title 40 U.S.C.A. § 290, supra, n. 2, is also firmly established. *Roelofs v. United States*, 501 F.2d 87 (5 Cir. 1974); *Stacey v. United States*, 270 F.Supp. 71 (E.D. La. 1967). These cases are in accord with Louisiana law affording the defense to governmental agencies. Cf. *Johnson v. Greater Baton Rouge Airport District*, supra, and authorities therein cited.

In 1975 the Congress enacted P.L. 94–163, 89 Stat. 874, 42 U.S.C.A. § 6201 et seq., known as the Energy Policy and Conservation Act, having as one of its stated purposes the creation of a Strategic Petroleum Reserve (Reserve) by the Federal Energy Administration of one billion barrels of petroleum products to be held in storage to reduce the impact of severe energy supply interruptions such as we had recently experienced as a result of the curtailment of sales of foreign oil to the United States by the world's major producing countries. The functions of the Federal Energy Administration were transferred to the Secretary of Energy when the Department of Energy was created in 1977.[4] The Secretary was authorized, directed and obligated to *design, construct, operate* and *maintain* storage and related facilities, and in order to

carry out this purpose was granted broad powers, among them being the acquisition of land or interests in land for the location of such facilities, and to "construct, purchase, lease or otherwise acquire storage and related facilities." See: 42 U.S.C.A. § 6239, as amended. Indeed, it would be difficult to conceive of a more complete range of authority for the establishment, construction, operation and maintenance of this undertaking, undoubtedly the largest of its kind in the history of the world.[5]

By definition, the term "storage facility" means any "facility or geological formation which is capable of storing significant quantities of petroleum products . . .", and "related facility" means ". . . any necessary appurtenance to a storage facility, including pipelines, roadways, reservoirs and salt brine lines."[6]

As part of the Reserve Plan, the Secretary was directed to establish an Early Storage Reserve, designed to store petroleum products to the maximum extent practicable in existing storage capacity. To this end, he was required to prepare and transmit to Congress within 90 days a plan for the storage of not less than 150 million barrels of petroleum products by the end of three years from December 22, 1975. We are informed by the Government in its brief that the West Hackberry facility was a part of the Early Reserve Plan. Since the date for transmittal of the Reserve Plan to Congress, December 15, 1976,[7] has come and gone, it is unimportant at this point in time which phase of the Reserve Plan included the West Hackberry, Louisiana, storage facility.

At the close of oral argument, the court directed the Department of Energy to file a

4. P.L. 95–91, Aug. 4, 1977, 91 Stat. 565, Title 42 U.S.C.A. § 7151.

5. The storage of commodities in time of plenty for use in years of famine has been recognized as a governmental function since biblical times. By interpreting Pharo's dreams of the seven kine and seven ears of corn and preparing for seven years of famine Joseph rose to great power in Egypt. Gen. 41:14–57.

6. See: P.L. 94–163, Title I, § 152, Dec. 22, 1975: 89 Stat. 882, Title 42 U.S.C.A. § 6232 for these and other definitions of terms employed in the Act.

7. Title 42 U.S.C.A. § 6234 directed the Secretary to meet this submittal date for the overall Strategic Petroleum Reserve Plan. Attainment of the goal of 150 million barrels of oil in storage under the Early Reserve Plan was to be accomplished by December 22, 1978. See 42 U.S.C.A. § 6235.

copy of the Strategic Petroleum Reserve Plan and its amendments into the record. The West Hackberry storage site is one of several that were considered by the department at the beginning of the program; it had an existing storage capacity in underground salt caverns of some 60 million barrels. It was estimated that an additional twenty ten-million-barrel caverns could be constructed at this site for a total storage of 260 million barrels of oil. See page 293 of the Reserve Plan. Subsequent amendments reported to Congress, particularly Amendment No. 1 detail the manner in which the plan was being implemented, leaving no doubt that the defendant DOE is engaged actively in constructing and developing the Strategic Reserves in accordance with the above-mentioned statutes.

The underground salt caverns at West Hackberry and other sites in Louisiana and Texas are created by the removal of salt by the use of brine wells which are drilled to the salt formation and literally wash the salt out. The process is not new. Much of the brine has been sold to various chemical corporations for commercial purposes, for some time in the past. The well at which this unfortunate accident took place was an old well, being reworked by Pelican Well Service under its contract with the Department of Energy. We have no difficulty in concluding that drilling, maintaining and reworking brine wells and like constructions is an integral, vital and indispensable part of the business of the Department of Energy in carrying out the mandate issued to it by the Congress in 1975 and continuing to the present time.[8]

We conclude that the motions to dismiss filed by the United States in these suits, treated as motions for summary judgment, must be sustained and the claims of these plaintiffs under the Federal Tort Claims Act or the general tort law must be dismissed.

In *Bergeron v. United States et al.*, No. 79–1261, which has been designated as the master file in these consolidated cases, and in *Simon et al. v. United States et al.*, No. 79–1276, plaintiffs have claimed against several other defendants. Pursuant to Title 28 U.S.C.A., Federal Rules of Civil Procedure, Rule 54(b) the court makes the express determination that there is no just reason for delay and directs the entry of a final judgment dismissing these claims against the United States through the Department of Energy.

In the related cases of *Bergeron v. United States*, No. 80–0333, and *Simon et al. v. United States*, No. 80–0451, the same plaintiffs claim only against the United States under the Federal Tort Claims Act. They are finally dismissed.

The attorneys for the United States shall forthwith prepare and forward for signature formal decrees in each case for signature. The Clerk is directed to withhold entry of judgment until such time as the formal decrees have been signed and filed.

IT IS SO ORDERED.

---

8. Other cases presenting strikingly similar business activities which impel us to this conclusion are: *Leger v. Amerada Hess Corp.*, 479 F.2d 1250 (5 Cir. 1973); *Cole v. Chevron Chemical Co.*, 477 F.2d 361 (5 Cir. 1973); *Howard v. Vulcan Materials Co.*, 367 F.Supp. 551 (M.D. La. 1973); *Allen v. United States Insurance Co.*, 222 So.2d 887 (La.App. 1969); *Doucet v. W.H.C. Inc.*, 212 So.2d 267 (La.App. 1968); *Thibodaux v. Sun Oil Company*, 40 So.2d 761 (La.App. 1949); *Turner v. Oliphant Oil Corp.*, 200 So. 513 (La.App. 1940).