341 So.2d 1220 (1976)
Jennings C. CAIN, Plaintiff-Appellee,
v.
WITCO CHEMICAL CORPORATION et al., Defendants-Appellants.
No. 10861.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writs Refused March 31, 1977.
*1222 Mary Olive Pierson, Sheldon D. Beychock, Baton Rouge, of counsel for plaintiff-appellee, Jennings C. Cain.
Ronald L. Ronzello, Louis M. Kiefer, Jr., New Orleans, of counsel for intervenor-appellant, Employers Mutual of Wausau Ins. Co.
Charles W. Franklin, Arthur H. Andrews, Baton Rouge, of counsel for defendants-appellants, Employers Mutual of Wausau Ins. Co., J. H. Hayes, J. D. Autrey and J. Rogers.
William L. Wilson, Frank Middleton, III, Baton Rouge, of counsel for defendants-appellants, Travelers Ins. Co., Witco Chem. Corp., J. H. Waples, Ray Bellanger, M. B. Carbo, M. B. Ulmer, R. Haydel, P. Johnson, and Robert Bauer, Jr.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
This personal injury suit concerns an incident on December 21, 1971, in which Jennings C. Cain, a truck driver for Younger Brothers, Inc., sustained severe acid burns while on the premises of Witco Chemical Corporation in Gretna, Louisiana.
On that day, Cain was delivering a load of sulfuric acid, or oleum, to Witco and, upon arriving, found that the dock where such products were unloaded was already being used by another Younger Brothers truck driver, Paul F. Trabeau, who had not yet completed the discharge of his load. Cain then parked his truck outside the plant and joined Trabeau where he was sitting, which was some fifteen to twenty feet from the rear of the latter's truck.
The acid was being pumped from the back of Trabeau's truck through a coupling device and into a two inch pipe which was a standard, schedule 80 carbon steel pipe, installed there by Witco to receive that product. Without warning, the pipe suddenly burst, spraying acid in the direction of the two men; both ran immediately, however, Cain slipped and fell and was showered with the oleum which caused extensive burns over a large part of his body.
Alleging the failure of the Witco pipe, the plaintiff brought suit against that company and against four pipe manufacturers who were eventually dismissed on motions for summary judgment. Witco thereafter made third party demands against Younger Brothers and three of its executive officers. Plaintiffs thereupon, by supplemental and amending petitions, named as additional defendants these same executive officers of Younger Brothers and certain executive officers of Witco. Third party demands were made by each of these groups of executive officers against the other for indemnification and/or contribution from one another. Employers Mutual Insurance Company of Wisconsin, Younger Brothers' workmen's compensation carrier, also filed a claim for the benefits which it had paid, the amount of which was eventually stipulated by all parties hereto.
In this posture, the case was tried to a jury for seven days. Judgment in the amount of $425,000.00 was rendered in favor of the plaintiff and against Witco and its executive officers, Messrs. Milton L. Ulmer and Robert E. Bauer, Jr., and their insurer, The Travelers Insurance Company, and against the executive officers of Younger Brothers, Messrs. Jesse D. Autry, James H. Hayes, and J. H. Rogers, and their insurer, Employers Insurance of Wausau. The third party demands, above, for contribution were recognized. All defendants *1223 cast have appealed and plaintiff has answered the appeal seeking an increase in the award. We conclude that the judgment rendered in the trial court should be affirmed in part and reversed in part.
The jury received the case with a general verdict form and eight special interrogatories, one of which asked for their findings as to the contributory negligence of Jennings C. Cain. After some deliberation, the jury sent a note to the court asking, in effect, whether Cain would receive damages if they found that he had been contributorily negligent. The court then reread to them the portion of its charge pertinent to that issue.
After further deliberations, the jury returned its verdict which found, inter alia, that the plaintiff was guilty of contributory negligence but with a general verdict in favor of him in the amount of $425,000.00. The court then instructed them that there was a conflict between one of their special interrogatories and the general verdict and sent them back to resolve that conflict. The jury subsequently reversed its findings as to contributory negligence and allowed the general verdict to stand. The appellants maintained that the trial judge erred in not entering judgment based upon the jury's original finding of contributory negligence.
Code of Civil Procedure Article 1812 provides:
"Art. 1812. General verdict accompanied by answer to interrogatories
"The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.
"When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers.
"When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdict, or may order a new trial.
"When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial."
The decision of the trial court to return the jury for further consideration of the conflicting answers was entirely proper and specifically provided for by statute. We further note that the trial judge carefully refrained from pointing out the conflict or otherwise commenting on the dilemma to the jury. Consequently, we find no error in the actions of the court taken in that regard.
The facts surrounding this unfortunate incident are not seriously in conflict. Cain, a driver with tractor-trailer experience, was hired by Younger Brothers in April, 1971. He was trained and instructed for the hauling of acid by other Younger employees and drivers and was then assigned a three compartment truck for a "dedicated run" between Stauffer Chemical Company in Baton Rouge, Louisiana, and Witco. In addition to the operation of his truck, his training was concerned with the proper handling of this dangerous substance, as his "run" consisted of the delivery of two tanks of oleum to Witco and the loading there of one tank of sludge for delivery back to Stauffer. At Witco, he was to position his truck at the acid unloading dock, put on his full safety suit which had been provided for him by Younger Brothers, and then couple his discharge line to Witco's pipe for unloading. During that process, the oleum was pumped into the pipe which failed here under air *1224 pressure. Upon completion, he was to uncouple the truck, load the sludge and depart. The drivers were required to wear their full safety suit during the coupling and uncoupling operation; however, that rule had been relaxed by Younger Brothers to the extent that a driver could remove his safety jacket while the truck was being unloaded if he moved around to the front of the truck.
The jury concluded that Witco and two of its executive officers, Messrs. Ulmer and Bauer, were guilty of actionable negligence. We find that decision to be correct except as to Bauer, against whom judgment should not have been rendered. It was conclusively proved at the trial that the Witco pipe ruptured due to acid corrosion of which that company should have been aware. More particularly, it was shown that pure oleum passing through such a pipe would have little corrosive effect upon it, but that when oleum is diluted by water, its ability to corrode the pipe is greatly increased; where the oleum is considerably diluted, the corrosion can be extensive immediately.
It was further established that, not only was this pipe allowed to lay directly on the ground so that rain water could seep into it, but that Witco had provided a water hose at that location which the truck drivers used to wash off their trucks, the immediate area, and the pipe itself after loading or unloading.
Robert C. Anderson, an expert metallurgist, testified that the pipe which failed here had been corroded paper thin, that there was no evidence of defective manufacturing of the pipe, and that this type of pipe was not strong enough for use under these circumstances. He also related at length the devastating effects of diluted sulfuric acid upon such a pipe.
It further appeared that key Witco employees were aware, before this accident occurred, that such corrosion was likely under the circumstances previously described. In summary, a clear and convincing case of negligence on the part of Witco as to the lack of proper maintenance and the creation of a hazardous situation on their premises was made out.
At the time of this accident, Milton L. Ulmer was supervisor of maintenance for Witco and Robert E. Bauer, Jr. was the assistant maintenance supervisor. The rules pertaining to executive officer liability were set out in Canter v. Koehring Company, 283 So.2d 716 (La.1973), to wit:
"1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and *1225 has nevertheless failed to cure the risk of harm." (Emphasis ours)
In his position, Ulmer was responsible for the maintenance of all pipes at the Witco plant which included the replacement of any defective sections. By his own admission, he had not delegated the responsibility of the acid receiving line to anyone. Therefore, under Canter, supra, only Ulmer and Witco would be liable in part and the judgment as to Bauer must be reversed. See Hornsby v. Ray, 327 So.2d 146 (3rd La.App., 1976) and Lyle v. National Surety Corp., 304 So.2d 743 (3rd La.App.1974), writs denied 309 So.2d 341.
The negligence of Messrs. Autry, Rogers and Hayes, executive officers of Younger Brothers, relates solely to their alleged failure to properly instruct Cain (and Trabeau) on the use of safety equipment which was furnished the drivers. When Cain was initially hired by Younger Brothers he was assigned to Trabeau for "checking out" and safety instructions. Both Cain and Trabeau testified that they were led to believe that full safety equipment was to be worn only when they were coupling or uncoupling their individual truck with or from Witco's acid line. Particularly, that after the lines had been connected, the truck tank pressurized and unloading commenced, it was permissible to step back, remove their safety equipment and relax, visit, smoke, etc.
Hayes testified that he told both Cain and Trabeau that they could remove their safety equipment if they went around to the front of the truck. Yet, Hayes also testified:
"Q. Mr. Hayes, suppose that you and and II am now asking you about your instructions to the various truck driverssuppose that you, as a truck driver, were unloading your truck and I, as another truck driver, were waiting and I walked up to pass the time of day with you, do you feel that I should have my safety equipment on at that time?
A. No.
Q. Then I take it that no such instructions have ever been given to any of the drivers, to December, 1971?
A. For that particular thing?
Q. Yes.
A. No."
On the other hand, Autry and Rogers testified that the drivers should have been instructed to wear their full complement of safety gear whenever they were in close proximity to the commodity (acid), including the situation where they were sitting within twenty feet of the tanks and the rear of any truck that was being unloaded.
Mr. Autry, as executive vice-president of Younger Brothers, in charge of general overall operations of the company, stated it would have been against company policy for a supervisor not to have ridden with Cain within a reasonable period after the latter had received instructions from Trabeau to see that he (Cain) had been properly trained. This was not done.
Based on these considerations, the jury found that Cain had not been properly instructed. Stated another way, these executive officers of Younger Brothers breached a duty, recognized by them, to properly and adequately train Cain as to the procedure he should follow to protect him against the type of injury he sustained. We do not find that the decision of the jury in this regard is manifestly erroneous. However, we do find that the jury committed error as a matter of law in finding all three of these executive officers liable.
As stated above, Autry was the executive vice president of Younger Brothers. The overall responsibility for safety was delegated to Rogers, that company's director of personnel and safety. Rogers' capabilities are not questioned. He devised the company's safety program and made numerous trips to the Witco facility to assure himself that the rules were being followed. On occasion he personally conducted safety meetings.
The day-to-day responsibility for safety instruction rested with Hayes. He was the terminal manager. He readily admitted *1226 that if the jury found that Cain had not been properly instructed it would have been his (Hayes) responsibility. Further, that it was also his responsibility to see that Trabeau was sufficiently informed so as to adequately train Cain. In addition, it was this officer's responsibility to have a supervisor "check-ride" Cain. He also acknowledged that one of his instructions "might have been that he (Cain) need not wear safety equipment around anyone else's truck, just his (Cain's) own truck."
We find no basis to hold that the delegation of this authority by Autry and Rogers to Hayes was unreasonable or wanting in that "degree of care required by ordinary prudence." Judgment against Autry and Rogers should be reversed. Canter v. Koehring Co., above.
We now turn to the pivotal question of the plaintiff's contributory negligence. That issue is not free from difficulty. We think, however, that the jury properly resolved it in favor of the plaintiff. The essence of the present inquiry is whether the plaintiff acted reasonably under the circumstances or whether he disregarded his own safety in placing himself in a position of known or foreseeable danger. Romano v. Bonstaff, 198 So.2d 499 (La.App. 4th Cir. 1967); Jordan v. Fidelity & Casualty Company of New York, 259 So.2d 442 (La.App. 3rd Cir. 1972); Lambert v. Padgett, 324 So.2d 512 (La.App. 1st Cir. 1975).
As we previously noted, Cain joined another driver, Trabeau, at a position already occupied and assumed safe. Trabeau was Cain's safety instructor. This is, in itself, considerable proof of the reasonableness of Cain's conduct.
Further, the record clearly indicates that the anticipated danger was an occasional, close proximity, spillage or drippage of the oleum from the coupling device and that the coupling and uncoupling was the critical safety period. Not to be expected was a full pressure blowout spraying acid in all directions for unusual distances.
It is argued that signs posted in the area requiring drivers to have their safety suits on were negligently disregarded by the plaintiff. However, Witco employees regularly walked around the discharging trucks at will without safety suits, at distances similar to those occupied by the two drivers here. When viewed as a whole, we conclude that Cain was not guilty of contributory negligence.
We are not unmindful of the fact that we have judged Cain's conduct (on contributory negligence) somewhat differently than we have judged Hayes' conduct (on negligence). The latter was experienced in all facets of acid transportation, loading, unloading, and storage. His superiors recognized the hazard of a possible rupture. Cain, because of his limited experience, did not. In considering the negligence and contributory negligence in a situation such as here presented, we are not bound to require identical conduct of the plaintiff and a defendant. "Varying factors affect what the standard of the reasonable man requires. For example, the defendant may have more information than the plaintiff as to the risk involved or by reason of the particular enterprise may be required to obtain this information.. . These factors must be considered in measuring the reasonableness of each party's conduct." Prosser, Handbook of The Law of Torts, Ch. 11, p. 419 (4th ed. 1971); Hall v. Hartford Accident & Indemnity Company, 278 So.2d 795 (4th La. App., 1973), writs refused 281 So.2d 753.
Similarly, the argument raised by Witco that the plaintiff's only recovery can be in workmen's compensation must be rejected. The theory of this defense is that under the provisions of R.S. 23:1061, Witco was, under the circumstances of this case, a statutory employer, and thus Cain can not recover in tort against it. In support of this contention, they maintain that the work being done by Cain was part of the trade, business or occupation of Witco. The jury correctly rejected this defense.
The record clearly establishes that the hauling of acid was a function which Witco required for the successful operation of its business but was also one which they did not desire to become involved in. Mr. Anthony *1227 J. Zazzarino, the general traffic manager for Witco's United States Division, testified at page 1001 of the transcript as follows:
"Q. All right. Does Witco Chemical Corporation haul any sulfuric acid at any places that use sulfuric acid?
A. In our own trucks?
Q. Right.
A. No, sir."
And further, at page 1009 of the transcript:
"Q. Well, what was your statement?
A. I said that one of the reasons that we do not have private carriage at the Gretna locationI didn't say that we didn't have vehicles to transport sulfuric acid; I said one of the reasons that we are not involved in private carriage at the Gretna location.
Q. It's because it's the policy of Witco Chemical Corporation.
A. One of the reasons was that we have a policy not to be in the transportation business, yes."
Therefore, that defense has no merit.
Inasmuch as we have concurred in the jury's finding that Witco and an executive officer of Younger Brothers are joint tort feasors, it is not necessary that we address ourselves to the issue of prescription filed by the executive officers of these two companies.
We have no difficulty concluding that the quantum awarded by the jury should not be disturbed. Cain sustained burns over fifty percent of his body; their severity was well documented by the testimony of Dr. Charles H. Baughman, a surgeon and burn specialist who treated the plaintiff. The record reflects that an acid burn similar to that sustained by Cain, unlike other burns, continues to react on the body for seventy-two hours even though the wounds are thoroughly washed. The pain and suffering endured by Cain, particularly during the first few weeks, can only be depicted as indescribable. In addition to the intense discomfort, the scarring and the physical and emotional reactions accompanying this catastrophic injury plainly caused changes to his body and mind from which he would never recover. Likewise, the unfortunate death of the plaintiff some seven months after the trial herein can not serve as grounds for a reduction; the jury's award is still appropriate in view of the four years of life endured by him under the conditions in which he found himself from the date of this accident.
As previously mentioned herein, at the beginning of the trial, all counsel stipulated that the workmen's compensation insurer, Employers Mutual Insurance Company of Wisconsin, was entitled to recover its payments on behalf of Cain if recovery was had by the plaintiff. The judgment signed by the trial court specifically granted Employers Mutual Insurance Company of Wisconsin's claim for reimbursement in the amounts of $8,771.00 for weekly compensation benefits and $24,088.78 for medical benefits. "Said judgment to be paid from the award of Jennings Cain with preference and priority."
Employers Mutual has appealed contending that the judgment is erroneous in its failure to include reimbursement for additional medical expenses and weekly compensation payments paid subsequent to the date of trial. Of course, the amounts of any additional sums which may have been paid by the workmen's compensation insurer are not contained in the record.
In Hall v. Hartford Accident & Indemnity Co., above, a similar situation was presented. There the court amended the judgment to allow a continuing credit against the judgment received by the plaintiff against the tort feasor to include the period of time that lapsed between the date of the trial and the conclusion of the matter on appeal. The same was done in Barrios v. Service Drayage Company, 250 So.2d 135 (4th La.App., 1971). The judgment in the instant matter should be similarly amended.
As noted above, Mr. Cain died subsequent to the date of the trial in the district court. *1228 On proper motion, Margaret Erdos Cain has been substituted as plaintiff in this cause, individually and as the provisional administratrix of the estate of Jennings C. Cain. Judgment in this cause should also be amended to reflect this substitution.
Accordingly, for the above reasons, the judgment of the district court is affirmed insofar as the same awards judgment in favor of Margaret Erdos Cain, individually and as provisional administratrix of the Estate of Jennings C. Cain, in the amount of FOUR HUNDRED TWENTY-FIVE THOUSAND AND 00/100 ($425,000.00) DOLLARS, and insofar as the same is against Witco Chemical Corporation, Milton L. Ulmer, The Travelers Indemnity Company, James H. Hayes, and Employers Insurance Company of Wausau, jointly, severally and in solido, with co-defendant, Employers Insurance Company of Wausau's principal liability to be limited to the $100,000.00 limit of its policy, together with legal interest thereon from December 21, 1972, until paid. The judgment insofar as the same is against Robert Bauer, J. D. Autry, and James H. Rogers is reversed and set aside. The judgment insofar as the same relates to the workmen's compensation insurer is amended and as amended is to read in its entirety:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of intervenor, Employers Insurance Company of Wausau, in the amount of EIGHT THOUSAND SEVEN HUNDRED SEVENTY-ONE AND 00/100 ($8,771.00) DOLLARS representing previously paid weekly workmen's compensation benefits as well as TWENTY-FOUR THOUSAND EIGHTY-EIGHT AND 78/100 ($24,088.78) DOLLARS representing previously paid medical benefits, together with such additional amounts as it may be required to pay or has paid as workmen's compensation benefits, together with legal interest thereon from date of judicial demand, until paid, said judgment to be paid out of the award to Margaret Erdos Cain, individually and as provisional administratrix of the Estate of Jennings C. Cain, with preference and priority.
The judgment with respect to third party plaintiffs, Witco Chemical Corporation, Milton L. Ulmer, Robert E. Bauer, Jr., and The Travelers Indemnity Company, against third party defendants, Jesse D. Autry, James H. Rogers and James H. Hayes, is reversed insofar as the same pertains to Robert E. Bauer, Jr., Jesse D. Autry and James H. Rogers. In all other respects this portion of the judgment is affirmed.
The judgment insofar as the same relates to third party plaintiffs, Jesse D. Autry, James H. Rogers, James H. Hayes, and Employers Insurance Company of Wausau, against Witco Chemical Corporation, Milton L. Ulmer, and The Travelers Indemnity Company, is reversed insofar as the same pertains to Jesse D. Autry and James H. Rogers; in all other respects this portion of the judgment is affirmed.
The judgment with respect to Witco Chemical Corporation's third party demand against Younger Brothers for indemnity is affirmed.
The judgment insofar as the assessment of costs is amended to cast the defendants, The Travelers Indemnity Company, Milton L. Ulmer, Witco Chemical Corporation, James H. Hayes, and Employers Insurance Company of Wausau, in solido, for all costs of these proceedings.
In all other respects the judgment appealed is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND AS AMENDED AFFIRMED.