George E. BLANCHARD, Plaintiff-Appellant, Cross-Appellee,

v.

ENGINE AND GAS COMPRESSOR SERVICES, INC. and Gulf Oil Corporation, Defendants-Appellees,

v.

COMMERCIAL UNION INSURANCE COMPANY, Intervenor-Appellee, Cross-Appellant.

No. 75–4216.

United States Court of Appeals, Fifth Circuit.

March 6, 1980.

Harry R. Allen, Gulfport, Miss., Walter E. Ross, Jr., Biloxi, Miss., for plaintiff-appellant, cross-appellee.

George E. Morse, Gulfport, Miss., for Gulf Oil Corp.

Thomas L. Stennis, II, Gulfport, Miss., Felicien P. Lozes, New Orleans, La., for Commercial Union Ins. Co.

Sherman L. Muths, Jr., Gulfport, Miss., for Engine Compressor Services, Inc.

Claude D. Vasser, New Orleans, La., for defendants-appellees.

Before BROWN, GEWIN and TJOFLAT, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

As it once was,[1] the issue which will not go away is whether the District Court erred by entering a directed verdict in favor of Gulf Oil Corporation, ruling that it was the "statutory employer" of Blanchard under LSA–R.S. 23:1061 (West 1964) and that his sole remedy against Gulf was under the Louisiana Workmen's Compensation Act. We reverse the holding of the District Court and remand for further proceedings consistent with this opinion.

*Twice Told Tales*

George E. Blanchard was employed as a mechanical supervisor by Engine and Gas Compression Service, Inc. (Engine and Gas). This company supplied mechanical services to Gulf Oil Corporation (Gulf) to maintain and repair compressors at its Ingersoll Rand Station in the Mississippi River Delta, about thirty minutes from Venice, Louisiana.

Blanchard and Pollard Lee, another employee of Engine and Gas, were assigned to the Ingersoll Rand Station. While performing some extensive repairs on a compressor there, Blanchard became covered with oil. In this condition, he tried to re-

1. *Blanchard v. Engine & Gas Compression Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978).

place a 150 pound compressor bearing cap. The cap fell on him, and Blanchard slipped and injured his back, suffering permanent partial disability.

Blanchard sued his employer and Gulf for damages under the Jones Act and in diversity under Louisiana tort law. The District Court granted the defendants' motion for summary judgment on the Jones Act claim which we affirmed. The diversity action proceeded to trial where the District Court entered a directed verdict against Blanchard on the grounds that he was a statutory employee of Gulf under the Louisiana Workmen's Compensation Act, and his right of recovery was therefore limited to workmen's compensation. Blanchard appealed and we certified this issue to the Louisiana Supreme Court.

### An Unanswered Query

But our hopes for a surer, if not easier, answer were dashed by the Supreme Court's cryptic, enigmatic response, relying as it properly could on the Rule's[2] discretion to decline to answer:

> In Re: George E. Blanchard, applying for Certification from the Fifth Circuit Court of Appeal, No. 75–4216.

2. La.Sup.Ct. Rules:
RULE XII. CERTIFIED QUESTIONS FROM FEDERAL COURTS
Section 1. When it appears to the Supreme Court of the United States, or to any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.

3. § 1061. Principal contractors; liability
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in

Decline. The jurisprudence of this Court does not warrant an additional pronouncement at this time. See *Reeves v. Louisiana & Arkansas Ry.*, 282 So.2d 503 (La.1973); *Lushute v. Diesi*, 354 So.2d 179 (La.1978); La.Sup.Ct. Rules XII, Sec. 1.

We continue to feel that Louisiana jurisprudence demonstrates two different standards for determining when a principal is considered the statutory employer of his contractor's employee, and we express here our feelings of hesitation at the prospect of divining Louisiana law without the guidance which the Louisiana Supreme Court is in the best position to give. We pay special attention to the cases cited for us by our brethren on the Louisiana Supreme Court, *Reeves v. Louisiana & Arkansas Railway*, 282 So.2d 503 (La.1973) and *Lushute v. Diesi*, 354 So.2d 179 (La.1978).

### The Louisiana Statutory Employer

Louisiana Workmen's Compensation Law, LSA–R.S. 23:1061, provides that the principal for whom a contractor is performing work which is part of the principal's "trade, business or occupation,"[3] shall be

this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

liable for workmen's compensation benefits to the contractor's employees.

Although in practice—at least as we see it in the flood of diversity and maritime or quasi-maritime cases—the purpose of the section is urged, looked upon or held to be immunity to traditional third party tort liability,[4] the true purpose of this provision, as long ago described (and since many times echoed) in *Horrell v. Gulf & Valley Cotton Oil Company, Inc.*, 15 La.App. 603, 610, 131 So. 709, 714 (1930) is:

> to protect employees of minor contractors against the irresponsibility of their immediate employers by making the principal employer, who has general control of the business in hand, liable as if he had directly employed all who work upon any part of the business which he has undertaken to carry on.

Coincident with this responsibility placed on the statutory employer, the Louisiana Workman's Compensation Act, LSA–R.S. 23:1032[5] (West Supp.1979), limits a contractor's employee's recovery to the compensation benefits. The result is that a statutory employer cannot be sued in tort. Of course, the "exclusive remedy" defense will not bar a tort action against the principal if it is not a statutory employer, that is, if the work performed by the contractor was not part of the defendant's "trade, business or occupation."

Thus, we turn to Louisiana jurisprudence to determine what standard to use in deciding whether the work done by Blanchard was part of the "trade, business or occupation" of Gulf. In our previous opinion in this case, 575 F.2d at 1143–45, we discussed various Louisiana cases and found them somewhat inconsistent. However, the Louisiana Supreme Court has indicated to us that *Reeves, supra*, states the controlling rule of law.[6]

*Reeves* involved the installation of a coking unit by Foster Wheeler Corporation on the premises of Humble Oil and Refining Company. The plaintiff, an employee of Foster Wheeler, was injured on the job and asserted a tort action against Humble. The Court ruled in favor of the plaintiff, holding that he was not Humble's statutory employee. The Court did not mention the "essential to business" test articulated in *Thibodaux v. Sun Oil Company*, La.App., 40 So.2d 761 (1949), *aff'd*, 218 La. 453, 49 So.2d 852 (1950). Under this test, the statutory employer-employee relationship exists between a principal and the employee of its subcontractor whenever the work done by the employee is essential to the principal's business. However, in *Reeves*, the Court did find that

> it was not Humble's business practice to engage in new construction of this type and magnitude, nor does the record support a conclusion that this type work was customarily done by Humble or other

---

4. See LSA–R.S. 23:1032, discussed *infra*.

5. § 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

> The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the

time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

\* \* \* \* \* \*

6. Besides *Reeves*, the Louisiana Supreme Court also directs our attention to *Lushute v. Diesi, supra*. This case involved a workman who was killed while trying to repair an air conditioner at a restaurant. The Louisiana Supreme Court held that his widow could recover in tort against the restaurant because her husband was an independent contractor and not the restaurant's statutory employee. The Court relied on the fact that the restaurant had no control over the means he used to make repairs. However, the Court did not discuss any sort of general guidelines for determining statutory employment. Therefore, we find this case of little assistance here.

employers similarly situated. The record does not support a conclusion that Humble is a statutory employer.

*Reeves, supra,* 282 So.2d at 508.

In *Freeman v. Chevron Oil Co.,* 517 F.2d 201 (5th Cir. 1975), Judge Ainsworth for this Circuit followed *Reeves* in holding that the installation of a septic tank on a fixed drilling platform was not a part of the business of the defendant Chevron. Judge Ainsworth criticized the "essential to business" test as too superficial to be used as the sole criterion in identifying statutory employment:

> The testimony of the Chevron witness, Baudouin, that the work being performed is "absolutely necessary" to his company's business, is not decisive because we infer that Chevron does not contract for work by independent contractors such as Herb's unless it is helpful and necessary to the operation of its business enterprise. *See Cole v. Chevron Chemical Co.,* 5 Cir., 1970, 427 F.2d 390, 394. If every employee of such an independent contractor thereby becomes a statutory employee of Chevron, the concept of statutory employee would be expanded beyond practical limits and lead to ridiculous consequences. We decline to reach such an unsound result.

*Id.* at 206.

Instead, Judge Ainsworth looked at all the facts of the case, including whether Chevron had the facilities to install its own septic tanks (*id.* at 208), to determine whether installation of the sewerage system was part of the usual and customary practice of Chevron. Although the Court had to recognize that in this day and time an adequate sewerage system was absolutely necessary, the "essential to business" test so long extolled had to be given a reasonable and practical application:

> While the installation of the sewerage system was important to pollution control on. its drilling platform in the Gulf of Mexico, it was not so closely related thereto as to become an integral part thereof and therefore was not essential to the employer's business as that term is understood in the context of being basic, fundamental, indispensable or imperative.

*Id.* at 209.

Professor Larson has also criticized the "essential to business" test and after analyzing scores of cases has expressed what he believed to be the true test:

> From these cases it will be readily seen that the test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

A. Larson, The Law of Workmen's Compensation § 49.12, at 9–23 to 9–24 (1973).

In *Ball v. Kaiser Aluminum and Chemical Corporation,* La.App., 112 So.2d 741, 745 (1959), the Louisiana Court of Appeals remarked:

> The jurisprudence as it has developed since the Horrell case reveals that there possibly exists what counsel has referred to as a "twilight zone" (which was also recognized by Judge Janvier, who authored the opinion in the *Horrell* case) where it is sometimes difficult to distinguish between an independent contractor and an employer on the basis of application of the trade, business, or occupation rule.
>
> In these cases the court must decide whether the work performed is that which is customarily performed by the employer or whether it is specialized work usually given to independent contractors as a practice or custom in the trade or business.

More recently, we find this language concerning the "customary" practice of those engaged in that particular operational activity echoed throughout Louisiana and federal cases interpreting § 1061. *See, e. g., Massey v. Rowan Drilling Co.,* 368 F.2d 92,

93–94 (5th Cir. 1966); *Frey v. Brown*, 254 So.2d 491, 493 (La.App.1971); *Meche v. Farmers Drier and Storage Company*, 193 So.2d 807, 809 (La.App.1967).

██ Despite our already expressed hesitation to rule on a state law issue which has not been categorically resolved in state court, we are, by the Supreme Court's expressed unwillingness to answer the certified question, now forced to do so. Therefore, after due consideration of Larson and Louisiana and federal cases, including *Reeves* and *Freeman*, we hold that in Louisiana, the "essential to business" test is no longer, if it ever was, the controlling factor in the identification of a statutory employer. The proper standard, as we see it, is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.[7]

██ More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee.

██ In applying this test, it is proper to consider all facts which would or would not suggest a statutory employment relationship. Whether the work is essential to the business of the principal or others engaged in similar businesses, may be one such fact.

██ Another fact to consider is whether the principal, or others engaged in like operational activities, normally subcontract out the work or whether they have employees who can, and customarily do, do the work. If the only fact which suggests the activity is not part of the principal's trade or business is that the principal has no employees of his own to do the work, this fact alone will not preclude the application of § 1061, provided all other evidence indicates the activity is an integral part of the principal's business. This was the holding of a recent Louisiana Supreme Court case, *Barnes v. Sun Oil Company*, 362 So.2d 761 (La.1978). *Barnes* involved the repair of Sun Oil Company pipelines by a contractor whose employee was injured on the job. Although Sun Oil maintained no employees to do this kind of work, the Louisiana Supreme Court held that "this fact alone [did] not prevent the labor from being part of [Sun Oil's] regular business." 362 So.2d at 764. Just as § 1061 prevents a principal from avoiding statutory employer status and workmen's compensation liability by contracting out all his business, this provision also implies that the mere fact that a principal contracts out all of his work does not necessarily mean he is *not* a statutory employer for purposes of avoiding tort liability.[8]

---

7. Our research has disclosed two Louisiana cases which hold that the repair, or even the replacement, of a compressor unit is part of an oil company's business, trade or occupation under § 1061. *Perry v. Texaco Company*, 320 So.2d 310 (La.App.1975); *Allen v. United States Fire Insurance Company*, 222 So.2d 887 (La.App.1969).

8. We were troubled in our previous opinion (575 F.2d at 1145) by *Cain v. Witco Chemical Corp.*, 341 So.2d 1220 (La.App.1977), "in which

a statutory employee defense was rejected simply because the company 'did not desire to become involved in' the activity in which the plaintiff was injured." The First Circuit of Louisiana, in *Boudreaux v. Boudreaux*, 369 So.2d 1117, 1119 (La.App.1979), has recently explained its holding in *Cain*:

We did not mean to indicate thereby that a principal could avoid statutory employer status by contracting with another for the performance of a job integral to its trade, busi-

### Applying The Proper Standard To Our Facts

In reviewing the District Court's directed verdict in defendant's favor we must apply the "usual and customary practice" test to the specific facts of the case, keeping in mind the standard of *Boeing Company v. Shipman, en banc*, 411 F.2d 365, 374–75 (5th Cir. 1969), for review of directed verdicts in federal diversity cases:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Blanchard was an employee of Engine and Gas, a company which provided mechanical services to Gulf's compressor station. A compressor station runs twenty-four hours a day, gathering natural gas from wells and building up the pressure in order to transport the gas.

Gulf employed its own mechanics to do overhauls and routine maintenance of the compressor engines. Gulf also hired additional men, through companies such as Engine and Gas, when things got busy or when there was an emergency situation, called a "flare." There was a flare at the time of the accident in question, and Gulf's most specialized mechanics were not available. The Engine & Gas mechanics, including Blanchard, performed both routine maintenance and more specialized tasks. Blanchard was paid by Engine and Gas but the time was approved by Gulf. Gulf supplied Blanchard with tools and repair manuals. Blanchard testified that Gulf supervisors had the power to remove him.

There is conflicting testimony as to the extent of Blanchard's expertise. There seems to be no dispute that he was capable of doing the most specialized types of repairs. He once testified he did not know if Gulf had its own employees who could do work as specialized. But he also stated that Gulf had no employee as expert in specialized repairs as Blanchard. Pollard Lee, a fellow Engine and Gas employee and a co-worker at Gulf, agreed with the latter statement by Blanchard. Another Engine and Gas employee who worked at Gulf, Herbert Ellis, stated that Gulf had mechanics just as specialized as Blanchard, and Engine and Gas employees were used only as extra hands when things got particularly busy and there were not enough Gulf employees to do the job. Of course, Gulf agrees with Ellis' testimony.

Even if Gulf had no employees as expert as Blanchard, the recent Louisiana Supreme Court decision in *Barnes v. Sun Oil Company, supra*, would indicate that "this fact alone does not prevent the labor from being

---

ness or occupation, for that would be in direct conflict with Sec. 1061. Our intent was merely to point out that while some manufacturers might also be in the business of transporting raw materials to their plants, Witco

was not. *Cain* is not authority for plaintiff's argument in the instant case.
We believe *Cain* can be limited to its facts and no longer need trouble us.

part of [the principal's] regular business." 362 So.2d at 764.

But on the now critical problem of the principal's normal trade or practice (or that of the particular industry) the evidence does not really address the issue. And in no sense is it sufficient to meet *Boeing* standards for an instructed verdict.[9]

While many facts in the record, considered in conjunction with *Barnes,* would weigh in favor of affirming, we are mindful that the District Court must have felt as much uncertainty as to the applicable standard for ascertaining statutory employment status as we felt when we certified the issue to the Louisiana Supreme Court. It is very likely the District Court applied the "essential to business" test, and certainly the record reveals no consideration of the usual and customary practices of Gulf and other oil companies, the test which we spell out today.

The cause must therefore be remanded for a determination of this issue on the facts. The remand does not necessarily envisage a full dress trial. Based upon facts, not what a party says the facts are or what such facts say, the case may or may not survive a motion for summary judgment, a motion for directed verdict or a motion for judgment notwithstanding the verdict after a verdict is rendered.

REVERSED and REMANDED.

---

**9.** Although not confronted with Seventh Amendment *Boeing* problems, our research discloses one Louisiana Court of Appeals decision reversing the summary judgment of the trial court that the statutory employment relationship did not exist between principal and subcontractor's employee. The case was remanded for more evidence to be taken on whether repair activities were part of an employer's customary, normal trade or business. *Shird v. Maricle,* 156 So.2d 476 (La.App.) (1963).

This was a case in which the principal, engaged in the business of purchasing and selling tree stumps, hired a subcontractor to cut and haul tree stumps, undeniably a part of the principal's business. The injury to the subcontractor's employee occurred while he was repairing his immediate employer's truck. Thus, the issue on remand was not whether the *principal* normally repaired his trucks, but whether the *subcontractor* usually did his own repairs.