Ramona Allemand **HIRD**, Plaintiff,

v.

**RESOURCE DRILLING, INC.,**
**Defendant.**

Civ. A. No. 80–1972.

United States District Court,
E. D. Louisiana.

April 16, 1981.

Jack C. Benjamin, Irving J. Warshauer, New Orleans, La., Porteus R. Burke, New Iberia, La., for plaintiff.

Kevin L. Cole, Metairie, La., for intervenor, American Liability Ins. Co.

Robert E. Peyton, New Orleans, La., for defendant Resource Drilling Co.

Donald O. Collins, New Orleans, La., for defendant Crown Zellerbach Corp.

John C. Christian, New Orleans, La., for third party defendant Chevron Oil Co.

Lawrence E. Abbott, New Orleans, La., for third party defendant Hunt Energy Corp.

CASSIBRY, District Judge:

## MOTION FOR SUMMARY JUDGMENT

Plaintiff's deceased husband, Timothy Hird, was employed by Air Engineering Systems and Services, Inc. On January 22, 1980, Hird was fatally injured while working on a compressor owned by the defendant, Resource Drilling Company (Resource), and located on a Resource oil rig near Frost, Louisiana. Hird's widow and children brought this action in tort against Resource Drilling.

Resource has filed a motion for summary judgment, claiming that the plaintiff has no right of action in tort against it because it is the "statutory employer" of the decedent and the employer's compensation remedy is the exclusive action against his employer or any principal.

Section 1061 of the Louisiana Workmen's Compensation Act provides that a principal who hires a contractor to perform work which is part of the principal's "trade, business, or occupation" shall be liable for workmen's compensation benefits as if he was the plaintiff's employer.[1] The statute was

---

1. La.Rev.Stat.Ann. § 1061. Principal contractors; liability

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execu-

tion of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employ-

originally designed to insure that injured employees of minor contractors could recover against the principal employer even if their immediate employer was financially irresponsible, and to prevent principals from escaping workmen's compensation liability by "farming" out their work to independent contractors.

Subsequent events, however, have now made § 1061 a classic example of a double-edged sword. The development of tort immunity for the principal, even if it has not paid out compensation benefits, makes the position of statutory employer particularly attractive. Professor Wex Malone has described the curious result of this turn of events:

> It then developed that almost all the cases brought by the injured worker against the principal were cases sounding in tort, and in most instances the worker had already received compensation from his immediate employer. Section 1061 then was being interpreted in a context for which it was never intended: how should the question of a principal's tort liability to the employee of a contractor be resolved? The section makes no indication that this subject was intended to be resolved by its provisions, and until the jurisprudence established the principal's tort immunity, no one would have concluded that it should be so used. The difficulty posed for the student of the Act is, of course, that one wonders about the strength of interpretations of a section which were compelled by legal demands which the section was never intended to resolve.

W. Malone & H. Johnson, Workers' Compensation Law & Practice, § 126 at 251 (1980).

Perhaps with a view of the anomaly caused by the expansive interpretations of § 1061, the Fifth Circuit recently developed a statutory employer test somewhat narrower than the traditional test. In *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65 (5th Cir. 1980), Blanchard, an employee of Engine & Gas Compression Services, was injured while working on a compressor at a pumping station owned by Gulf Oil. The court initially certified the issue of the scope of the statutory employer doctrine to the Louisiana Supreme Court in the hope of getting a definitive ruling on the proper test to use in interpreting § 1061.[2] But the Louisiana Supreme Court invoked its discretion not to answer the question. In lieu of a definitive state court ruling, the court set out to find its own test.

The court noted that one traditional test employed by Louisiana courts is whether the activity performed by the contractor is "essential to the business" of the principal. However, after analyzing the decisions cited by the Louisiana Supreme Court in its remand to the Fifth Circuit—*Reeves v. Louisiana & Arkansas Railway*, 282 So.2d 503 (La.1973), and *Lushute v. Diesi*, 354 So.2d 179 (La.1978)—the court concluded that more recently Louisiana courts have focused on whether the work is customarily done by the employer or whether it is specialized work usually given to outsiders. Accordingly, it redefined the test as "whether the activity done by the injured employee or his actual immediate employer is part of the usual and customary practice of the principal or others in the same operational business." *Blanchard, supra*, at 71. The court went on to indicate the particulars of any inquiry as to a principal's "customary practice":

> More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a stat-

---

ee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

2. 575 F.2d 1140 (5th Cir. 1978).

utory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee. *Id.*

It therefore appears that this formulation of the statutory employer test sets forth two disjunctive criteria: (1) whether the work is customarily done by the principal's employees; or (2) whether that activity is an integral part of the employer's business.[3]

The first criterion appears to be the most useful test since it can be proved by objective evidence of the principal's or industry practice.[4] However, the second criterion may be necessary to handle those situations where the principal or perhaps the industry may attempt to contract out a task which is clearly part of the principal's business to escape liability under the Workmen's Compensation Act. This principle is illustrated in *Barnes v. Sun Oil Company*, 362 So.2d 761 (La.1978). In *Barnes* the plaintiff was injured while repairing the defendant's pipeline. The court held that even though the defendant contracted out all its repair work, the repair work "was an integral and essential part of Sun's business" and therefore the defendant was the statutory employer of the defendant.

■ Applying the two criteria set out in *Blanchard* to the facts in the instant case as revealed so far does not provide any clear answer to the question whether Resource Drilling was a statutory employer of the decedent. In his deposition, Lewellyn Fickes, maintenance superintendent for Resource, indicates that outside service companies almost always did the type of work—balancing and setting cut-in and cut-out switches—that Hird was doing when he was killed. Thus it appears that this was work not customarily done by Resource employees. The question whether the type of work Hird was doing was a part of or integral to Resource's business is more difficult. While I might be inclined to find that maintenance of compressors is an integral part of the oil drilling business,[5] in the *Blanchard* case itself, the court did not find that maintenance of air compressors was an integral part of the defendant's business. Instead, the court remanded to the district court to consider "the usual and customary practices of Gulf and other oil companies" in maintaining compressors. *Id.* at 73. Therefore, at this point I think that the facts as developed are sufficiently unclear that it would be unwise to grant summary judgment. Indeed, the only evidence of industry practice presented in the case, is the affidavit of Gary Lasseigne, an employee of Air Engineered, which indicates that

**3.** This view is supported by the language of the court in *Freeman v. Chevron Oil Company*, 517 F.2d 201 (5th Cir. 1975). In *Freeman*, the court held that the plaintiff who was installing a sewage system on an offshore oil rig was not a statutory employee of Chevron, the rig operator. The court stated:

We are satisfied under the peculiar facts and circumstances prevalent here that plaintiff was not engaged in an activity customarily performed by Chevron's employees or which was a part of Chevron's trade, business, or occupation, so closely related thereto to become an integral part thereof and that it was not essential to its business. *Id.* at 209. The two part test in *Blanchard* suggested above appears to be a paraphrased version of the language quoted above in *Freeman*. And *Free-*

*man* indicates that the test is satisfied if the principal customarily has his own employees do the work or when the activity is an integral part of the principal's business.

**4.** This criterion is also consistent with the now-standard effect of the statutory employer test— to shield the principal from tort liability. It seems fair to protect the principal from liability if he normally uses his own employees to perform some task, but on a particular occasion, makes use of an outside contractor.

**5.** *See Perry v. Texaco Company*, 320 So.2d 310 (La.App. 4th Cir. 1975); *Allen v. United States Fire Insurance Company*, 222 So.2d 887 (La. App.2d Cir. 1969).

the customary practice in the industry is "requiring outside service for repairs or service to the compressors in use." This suggests that servicing compressors may not be an integral part of the business.

█ There is an additional issue in this case raised by the facts presented which would make summary judgment unwise. The statutory employer doctrine is only applicable where the relation between defendant and the plaintiff's employer is that of principal and contractor. It does not apply to employees of a seller who make a claim against a purchaser. See W. Malone & H. Johnson, *supra*, § 123, at 236. In Louisiana this issue traditionally arose in cases involving the lumber industry. In those cases the alleged seller was often a middleman or broker between the landowner and the ultimate buyer. Usually the ultimate buyer initiated the purchase and the broker then contacted landowners and arranged the severance of the timber. Under those circumstances, the Louisiana courts often found that notwithstanding the elements of a sale, the middleman was actually a principal of the timber producer and therefore was the statutory employer of the timber producer's employee.[6]

However, the Louisiana Supreme Court did consider the distinction between sale and contractor arrangements outside the lumber industry context in *Broussard v. Heebe's Bakery, Inc.*, 263 La. 561, 268 So.2d 656 (1972). In *Broussard*, Heebe's bakery had an arrangement with Wolf's bakery that Wolf would supply certain products which would be labelled with Heebe's tradename and delivered to Heebe. An employee of Wolf's was injured while delivering the goods to Heebe because of the alleged negligence of Heebe. Heebe claimed that Wolf was a contractor for its bakery and therefore it was a statutory employer of Wolf's employee and immune from tort liability. The court of appeals agreed with Heebe, but the Supreme Court reversed.

The Court held that there was no indication like that found in the lumber cases that a contract ostensibly of sale "was entered into for the purpose of avoiding liability under the Act." It also noted that Heebe exercised no control over Wolf. It concluded that the transaction should be treated as a sale and therefore Heebe, the purchaser, was not exempt from tort liability.

The evidence in the present case suggests that the work Hird was doing may have been pursuant to a sale of the compressor. Mr. Fickes, maintenance superintendent for Resource Drilling, indicated in his deposition that the compressors on Resource rigs were manufactured by Quincy and sold by National Supply Company. All of the compressors were under warranty. He indicated that when the compressors were manufactured they were supposed to have been set within a range of certain working pressures. However, adjustments usually had to be made on the site when the compressors were actually installed into the system. In particular, the cut-in and cut-out switches on the compressor had to be balanced and set. Fickes also stated that Air Engineered Systems, Hird's employer, was a local distributor of Quincy compressors and it appears that Air Engineered was the local representative for Quincy. When an adjustment had to be made, Fickes would call National Supply, the seller, who would then contact Air Engineered to do the work, or Fickes would contact Air Engineered directly. According to Fickes, Hird was making such an adjustment when he was killed. Under the circumstances it is possible that Hird could be characterized as the employee of the seller engaged in installation of the compressor as part of the sale.

█ I am cognizant of the general rule that if the seller performs substantial services the existence of a sale will not prevent a statutory employer relationship from arising.[7] However, I believe that the facts of

---

6. See, e. g., *Hart v. Richardson*, 272 So.2d 316 (La.1973); *Calcote v. Century Indemnity Co.*, 93 So.2d 271 (La.App. 1st Cir. 1957).

7. See *Hart v. Richardson*, *supra*.

this case raise sufficient question about Hird's status to deny summary judgment.