**Vernon E. COTTRELL**

v.

**J.A. JONES CONSTRUCTION COMPANY, et al.**

**Civ. A. No. 83–0743.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Feb. 14, 1984.

John Sturgeon, Ferriday, La., for plaintiff.

John Halliburton, Asst. U.S. Atty., Shreveport, La., Kevin L. Cole, Antonio E. Papale, Metairie, La., for defendants.

NAUMAN S. SCOTT, District Judge.

### RULING

This matter is before us on a Motion for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P., by the United States. Finding that there are no genuine issues of material fact, and that defendant is entitled to a judgment as a matter of law, we dispose of the motion as follows.

### FINDINGS OF FACT

Vernon E. Cottrell was injured in April, 1982, while employed by J.A. Jones Construction Company in Catahoula Parish, Louisiana. At the time of his injury, his employer was under contract with the United States Corps of Engineers to construct a lock and dam on the Red River Waterway, Mississippi River to Shreveport, Louisiana, Lock No. 1, Phase 3 Construction. (Contract No. DACW 29–80–C–0082). The construction contract was executed by the Corps of Engineers pursuant to congressional authorization under the River & Harbor Act of 1968, P.L. 90–483; 82 Stat. 739, 741 (Aug. 13, 1982).

The River & Harbor Act of 1968 provided for the Red River Waterway, Louisiana,

Texas, Arkansas, and Oklahoma project, in accordance with House Document 304, 90th Cong., 2nd Sess., to be prosecuted under the direction of the Secretary of the Army and supervision of the Chief of Engineers, in accordance with the plans and subject to the conditions recommended by the Chief of Engineers in its report.

Cottrell was injured when an employee of J.A. Jones Construction, the Government's contractor, who was operating a P & H Omega Crane (cherry picker), backed the vehicle into a stack of wickets (huge timbers) extending from a truck trailer. Cottrell, seated in a passenger cage on the rear of the cherry picker, attempted to climb out while the crane was in reverse motion. Unable to unfasten his seat belt, he slipped and fell, catching his right ankle between the iron guards in the passenger cage and the wickets. As a result, he sustained severe injuries to his right leg.

Cottrell filed an administrative claim with the Army Corps of Engineers on June 24, 1982, seeking damages in the amount of $600,000.00. After six months but before denial of the claim, Cottrell brought this action in part against the United States for failing to provide a safe place to work, failing to administer a safety program, and failing to enforce OSHA and other safety regulations.

## CONCLUSIONS OF LAW

The United States contends that Cottrell was injured while doing work that was part of the usual and customary business of the United States, and therefore, it is entitled to the status of a statutory employer under the Louisiana Workman's Compensation Law, La.R.S. 23:1032; 23:1061. As a result, it argues that the instant action is barred.

■ Under the Federal Tort Claims Act (FTCA), the United States is liable for the tortious conduct of its employees to the same extent as a private person under State law. 28 U.S.C. § 1346(a); *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). Louisiana law provides that any person who contracts out work which is part of his trade, business, or occupation is liable to any employee of the contractor engaged in such enterprise for workman's compensation to the same extent as if the contractor's employee were one of its own employees. This is the *exclusive* remedy against that person. La.R.S. 23:1032; 23:1061.

The question we decide here is whether Cottrell was injured while doing work that is part of the trade, business, or occupation of the United States. If so, the United States is entitled to the same immunity from suit in tort as enjoyed by employers generally. *Raelofs v. United States*, 501 F.2d 87, 93 (5th Cir.1974), *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975); *Olveda v. United States*, 508 F.Supp. 255, 259 (E.D.Tex.1981) (citing cases).

■ In *Penton v. Zellerbach Corp.*, 699 F.2d 737 (5th Cir.1983), the Fifth Circuit enunciated the following principles which determine whether a statutory employment relationship exists. We must consider whether: (1) The activity which occasioned the injury of an independent contractor's employee is the type of work customarily done by the principal's own employees; *or* (2) The employee is injured while engaged in an activity which is an integral part of the principal's business. *Id.* at 741, citing *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65 (5th Cir.1980) (*Blanchard* II). These tests "are more easily stated than applied". *Id.* However, we are further guided by the view that a statutory employment relationship exists "only in those instances where the injured employee's employer is contracted to perform work which is so closely allied to that of the principal employer that it is in fact either an extension or component of the principal's commonly relied upon resources." *Id.* (citations and footnote omitted). Thus, in the usual case, our focus is on the relationship between the principal and the independent contractor rather than the injured employee's specific duties. *Id.* citing *Murphy v. Georgia-Pacific*, 628 F.2d 862 (5th Cir.1980).

■ Where the United States claims statutory employer status, however, a somewhat different situation exists. Because the United States is engaged in a vast number of trades and businesses pursuant to law, our attention is directed toward the statutes setting forth the responsibilities of Government departments or agencies which contract the work, see *Bergeron v. United States*, 495 F.Supp. 222 (W.D.La.1980), and the connexity between the work or business authorized and the work in which the independent contractor is engaged to perform. *Thomas v. Calavar Corp.*, 679 F.2d 416 (5th Cir.1982). The focus on the relationship between the United States as the principal and the independent contractor remains essentially the same.

■ For instance, in *Thomas, supra*, an employee of a sub-contractor, engaged pursuant to a contract with the United States to convert an underground salt mine to a crude oil storage site, was injured while operating a personnel basket of an aerial work platform. The Fifth Circuit found the following facts significant: (1) Congress had authorized the Department of Energy to establish, operate, and maintain underground crude oil storage sites under 42 U.S.C. § 6239, Energy Policy & Conservation Act; (2) The contractor engaged to perform the work was merely an instrument to execute the mission of the Department of Energy required by Congress. The court held that the sub-contractor was engaged in part of the usual and customary business of the United States, and therefore, the plaintiff was barred from maintaining an action against the United States under the FTCA by virtue of the statutory employer defense.

Here, as always, we must determine the issue of the United States' status as a statutory employer on the facts of this case. It is undeniable that Congress specifically authorized funds for the improvement of rivers and harbors for navigation in various waterways, including the Red River Waterway, Louisiana, Texas, Arkansas, and Oklahoma project (P.L. 90–483; 82 Stat. 731), in accordance with the report of work recommended by the Chief of Engineers, House Document 304, 90th Cong., 2nd Sess. Page 62 of that report proposes the plan which provides for the securing of minimal navigational depths through the construction of nine locks and dams on the Red River Waterway. In authorizing the work proposed under the plan, Congress empowered the Secretary of the Army to direct and the Chief of Engineers to supervise the works of improvement. Pursuant to this authority, the Secretary of the Army, through the Chief of Engineers, is required by law to contract or otherwise carry out the project for improvements in a manner most economical and advantageous to the United States. 33 U.S.C. § 622(a). In fulfilling this mandate, the Chief of Engineers elected to perform the work through sub-contractors which include the plaintiff's employer, J.A. Jones Construction Company. The contract, No. DACW 29–80–C–0082, required the construction of Lock and Dam No. 1, Phase 3 construction. Plaintiff's injury occurred on the jobsite while performing work necessary to the building of the lock and dam.

As in *Thomas, supra*, we find that the plaintiff's employer was engaged in work which was part of the usual and customary business of the Army Corps of Engineers, and hence the United States. J.A. Jones Construction was "merely an instrument" of the Secretary of Army to perform the work required by the Rivers & Harbors Act of August 13, 1982. In our view, the work that J.A. Jones Construction was engaged to perform, i.e., the construction of the lock and dam, is certainly part of the usual and customary business of the Secretary of the Army, acting through the Chief of Engineers and his Corps. Therefore, we believe that plaintiff's action in tort against the United States is barred by the statutory employer defense.

The facts here are easily distinguished from those of *Freeman v. Chevron*, 517 F.2d 201, 206 (5th Cir.1975) and *Cole v. Chevron*, 427 F.2d 390, 394 (5th Cir.1970). *Thomas, supra*, is controlling.